## A00A1725. PENA v. THE STATE.
### (542 SE2d 630)

PHIPPS, Judge.

Andrew Pena was convicted of one count of child molestation and one count of aggravated child molestation. He appeals the denial of his motion for new trial and asserts seven claims of error related to evidence admitted at trial and actions of the trial judge. Pena has waived several of his claims by failing to raise them in the trial court. Because we find no merit in the remaining claims, we affirm.

In September 1996, the Cobb County Department of Family & Children Services (DFACS) received a complaint that Pena's wife was abusing their children, E. P., A. P., and U. P.[1] DFACS caseworker Valerie McKenzie and Powder Springs police officer Cheri Brown jointly investigated the allegations. Ultimately they determined that there was not enough evidence to prove that the abuse occurred and closed the case.

In October 1996, DFACS received a report that Pena had been sexually abusing 11-year-old E. P. McKenzie and Brown scheduled an interview with E. P., her mother, and Pena at the Powder Springs Police Department. They first spoke to E. P., who disclosed incidents of sexual abuse by Pena, including an allegation that Pena had made her touch his penis. At that point, they stopped the interview so that they could arrange for it to be taped.

E. P.'s second interview, at the Child Advocacy Center, was taped. During that interview, E. P. said the following: One weekend when E. P. was at home with A. P., U. P., and Pena, E. P. told Pena that her knee was hurting and he told her to go to her room. There Pena began rubbing her knee and then pulled down her underwear and put his fingers on what she referred to as her private area. Before Pena left the room, he told E. P. that "this is between me and you." E. P. said that she was eight years old at the time. Pena again touched E. P.'s "private area" approximately two weeks later. E. P. was afraid to tell her mother what had happened for fear that she would not care about her anymore.

E. P. also described an incident when she was playing cards with A. P. and U. P. and Pena told her to go to his room. He followed her into the room and told her to lie down on his bed. While she was lying down on her side, Pena pulled down her panties and put his "pito" or "peanut" (her word for his penis) in her "pompas" or "bottom." E. P. believed that this happened when she was nine years old. Another time, Pena told E. P. to clean his bathroom. When she was finished, Pena told her to get on his bed. When she did so, Pena lifted up her

---

[1] Pena is E. P.'s stepfather and A. P. and U. P.'s natural father.

shorts and placed his "pito" in her "pompas." It happened again when E. P. was reading a book in her room and Pena told her to go to his room and get on the bed. E. P. said that Pena then placed his "pito" in her "bottom" and it hurt.

E. P. said that on Thanksgiving Day 1995, when she was ten years old, Pena came into her room at 6:30 a.m. after her mother had gone to work and tried to wake her up. Fearing that "it" would happen again, she screamed "no," and Pena left. When her mother came home, E. P. began crying and asked her not to go back to work but would not tell her why.

After the interview, McKenzie and Brown asked E. P. to prepare a written statement. The written statement describes essentially the same events described during the second interview.

E. P. testified at trial and described basically the same events she had described in her interviews with McKenzie and Brown. She was not able to remember exactly when the events took place, except to say that it started when she was "around eight years old."[2] E. P. said that she did not tell her mother everything that had happened at once. In August 1996, E. P. and her mother were watching a television commercial about children telling their parents about inappropriate touching, and E. P. told her mother that Pena had "touched her in the wrong way."

After interviewing E. P., her mother, and Pena, McKenzie and Brown developed a safety plan pursuant to which Pena agreed to leave the house while the investigation was ongoing. As part of the investigation, E. P. was physically examined by Dr. DeGrandi, director of the child advocacy clinic at Scottish Rite Children's Medical Center. He testified that E. P.'s rectal examination results were normal, with no scarring. Dr. DeGrandi also testified that his findings were both consistent and inconsistent with a determination that E. P. had been sexually abused. He testified that a child could be sexually abused by anal intercourse without scarring.

Beginning in October 1996, E. P.'s mother took her to Yael Layish, a child and adolescent therapist and licensed clinical social worker, for counseling. E. P. told Layish about some of the same incidents involving Pena and explained why she initially did not tell her mother about it. Layish described E. P. as anxious, sad, and depressed.

Pena was charged with two counts of child molestation (Count 1 for the period from December 6, 1992, to June 30, 1995, and Count 2 for the period from July 1, 1995, to October 23, 1996) and two counts of aggravated child molestation (Count 3 for the period from Decem-

---

[2] She was 13 years old at the time of trial.

ber 6, 1992, to June 30, 1995, and Count 4 for the period from July 1, 1995, to October 23, 1996). The State reduced Count 2 (the incident on Thanksgiving Day 1995) to attempted child molestation, and the court directed a verdict of acquittal on Count 4. The jury found Pena guilty on Counts 1 and 3 and not guilty on Count 2.

1. Pena argues that several of the State's witnesses improperly offered their opinions that Pena was guilty of molesting E. P. He acknowledges that he failed to make timely objections to most of the complained-of testimony, but contends that he preserved the error for appellate review by filing a motion in limine, which the trial court granted. In fact, Pena's motion in limine to exclude testimony on the ultimate issue — Did Pena molest E. P.? — was never ruled on by the trial court. "[W]hen an appellant fails to invoke a ruling on his motion, he has waived the issue for purposes of appeal. [Cits.]"[3]

Pena nonetheless argues that the admission of the opinion testimony should be reviewed under the plain error standard.

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.[4]

(a) Pena complains about the following testimony from Brown:

THE STATE: Have you ever run across any children in any types of cases who have not told you the truth?
OFFICER BROWN: Yes, I have. In fact, in a couple of cases I have.
THE STATE: How did you determine if they were fabricating or making it up?
OFFICER BROWN: Children have a way of maintaining or being consistent. They will tell you something and you can go back a week later and ask them again. Especially when they talk to other people in the case, DFACS or whatever, they maintain their consistency. Also, along with their consistency is how they act; how they are acting toward the offender that they are pointing their finger to. Such as, I had a case where the child claimed his father broke his arm. I listened to him and I didn't believe — there was a part of me

---

[3] *Delong v. State*, 185 Ga. App. 314 (363 SE2d 811) (1987).

[4] (Citations and punctuation omitted.) *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986) (on motion for rehearing).

that didn't believe him. There was a gut reaction. I thought something was wrong. I called the paramedic in and the arm wasn't broke. He just didn't want to tell his dad he got an F on his report card, but he was ready to send his dad to jail so he wouldn't have to tell him he got the F.

THE STATE: When you determine a child is lying, what happens to the allegation?

OFFICER BROWN: It is pretty much found unconfirmed. We unconfirm the case. We put it in a file and if we should receive another referral, we will immediately work it and go back out on it. When they are unconfirmed, we suggest counseling or psychiatric help for that child.

THE STATE: So, you have run into cases where the child has lied?

OFFICER BROWN: Yes, I have.

Pena also complains about this exchange:

THE STATE: How did you close up this interview with the defendant?

OFFICER BROWN: I told Mr. Pena that this was an active case and that I would have to be conducting the interview and at this time I was having some trouble believing his interview and that I needed to look it over and we would have to find some way to make E. P. safe right now because we couldn't allow him to go back into the home while the investigation was ongoing and Mrs. Pena had requested that he leave so she could maintain the children in school and that the children maintain going to school and the next solution would be removing all the children out to foster care. He didn't want that to happen.

THE STATE: Why were you having some difficulty in believing some of the defendant's statements?

OFFICER BROWN: It's just some of the answers I received. For example, I did go into an incident, the first incident with him about the knee with the daughter. I asked why he asked her daughter to go upstairs.

The trial court sustained an untimely objection to this testimony.

The first portion of Brown's disputed testimony merely explains how she determines if a child is being truthful and does not offer any opinion as to Pena's guilt. Its admission was not erroneous.

The second portion indirectly comments on Pena's guilt by commenting on his truthfulness during the interview, but its admission is not so egregious as to justify review under the plain error standard.

(b) Pena challenges the following testimony from counselor Layish on redirect examination:

THE STATE: What kind of characteristics or symptoms would a child have that had a False Memory Syndrome?
LAYISH: Again, I am going to call it false allegations.
THE STATE: All right. . . . When you were speaking with E. P. in her sessions, did E. P., was she able to communicate to you specific details?
LAYISH: Yes, she was.
THE STATE: Did you notice any symptoms of parroting or repeating want from E. P.?
LAYISH: No.
THE STATE: Did E. P. use any inappropriate language?
LAYISH: No.

Before this exchange, Pena's counsel objected to the State's general questions about false memory syndrome. The court overruled the objection because Pena's counsel had raised the issue during Layish's cross-examination, thereby opening the door to allow its discussion.[5]

We agree that Pena's cross-examination of Layish opened the door to allow this testimony.[6] Pena has waived his right to complain that the testimony improperly commented on his guilt.

(c) Pena also challenges the following testimony from DFACS caseworker McKenzie:

THE STATE: Did you talk to Mrs. Pena about any safety concerns of the daughter, E. P.?
McKENZIE: Yes, we did. After we talked with Mr. Pena regarding the allegations, then Cheri and I talked with Mrs. Pena regarding what she needed to do. We believed her daughter and we felt like either he and her children need to leave the home; or if not, then E. P. would come into care and Detective Brown stated if E. P. came into care, that A. P. and U. P. would come into care also. . . .
THE STATE: What arrangements did you make with Mrs. Pena regarding E. P., the child?
McKENZIE: I can't remember exactly because it's been so long ago, but I believe we signed a safety plan because we do that in allegations where we feel like allegations are confirmed. . . .

---

[5] See *Franklin v. State*, 224 Ga. App. 578, 580-581 (4) (481 SE2d 852) (1997) ("one cannot complain of a ruling that his own trial tactics or conduct procured or aided in causing").
[6] See *Beasley v. State*, 202 Ga. App. 349 (1) (414 SE2d 663) (1991).

THE STATE: What were the reasons you decided to confirm the case?

McKENZIE: Number one; I believed E. P.

At that point, Pena's counsel objected and asked that the State be admonished. The trial court sustained the objection and instructed the jury that the witness could state facts, but was not to give her opinion. The trial court also gave what it deemed an admonishment to the State's counsel. Pena's counsel did not object further or move for a mistrial. " 'When an appellant could have tendered a timely motion for mistrial or requested (additional limiting or curative) instruction but declined to do so, we generally will not grant more appellate relief than that actually prayed for at trial.' [Cits.]"[7]

2. Pena claims that the trial court improperly expressed its opinion of Pena's guilt in violation of OCGA § 17-8-57 when it informed the jury that a directed verdict had been granted on Count 4. Specifically, during its jury charge, the court stated that "[t]he court has removed Count 4 from your consideration because the evidence, as presented during trial, does not support the allegation in Count 4 of the Indictment." Pena contends that this comment left the jury with the impression that there *was* evidence to support the remaining counts.

Although Pena raised no specific objection to the court's comment, he preserved the matter for review by reserving a general objection to the charge.[8] "Remarks of the trial court assigning a reason for its ruling are neither an expression of opinion nor a comment on the evidence."[9] Moreover, the trial court instructed the jury that the court did not intend to express any opinion upon the evidence or the guilt or innocence of the defendant by its rulings or comments.[10] There is no merit to Pena's claim.

3. Pena argues that the trial court improperly inquired into the jury's numerical division during deliberations when the jury told the court that they were unable to reach a unanimous verdict on any count of the indictment. He claims that the inquiry violated his rights under both the United States and the Georgia Constitutions.

Although the trial court informed counsel that it was going to inquire into the jury's numerical division before doing so, Pena made no objection at any time to the inquiry. "Errors not raised in the trial

---

[7] *Smith v. State*, 210 Ga. App. 451 (2) (436 SE2d 562) (1993).

[8] *Sims v. State*, 266 Ga. 417, 418 (2) (467 SE2d 574) (1996).

[9] (Citations omitted.) *Young v. State*, 269 Ga. 490, 494 (4) (500 SE2d 583) (1998); see also *Holmes v. State*, 210 Ga. App. 118 (1) (435 SE2d 492) (1993).

[10] *Holmes*, supra.

court will not be heard on appeal. [Cit.]"[11]

4. Pena claims that the trial court erred by refusing to allow him to be present at the motion for new trial hearing. He argues that he had a constitutional right to be present at what he refers to as a critical proceeding in his case.

The Supreme Court of Georgia has ruled to the contrary. "[T]here is no law or constitutional principle which guarantees to a prisoner the right to be present in court upon the hearing of his motion for new trial."[12]

5. Pena contends that the trial court erred by allowing the victim's written statement to go out with the jury during deliberations. Pena concedes that his counsel introduced the statement into evidence and did not object to it being sent to the jury room. He urges that the claimed error should be reviewed under the "plain error" doctrine.

In *Walker v. State*,[13] pursuant to binding precedent of the Supreme Court of Georgia, we declined to review the same alleged error under the plain error standard. We also decline to do so here and hold that Pena " 'has waived his right to complain of this on appeal by failing to object at trial.' [Cits.]"[14]

6. Pena argues that the trial court made improper remarks when recharging the jury in response to their report that they were deadlocked.

He claims that the trial court's *Allen*[15] charge was coercive because it failed to inform the jurors that they would be required to retire to the jury room only for a reasonable time. Instead, the trial court instructed the jury that "[t]he rule of thumb is that you deliberate for the same number of days . . . that the case took to try."

Pena is precluded from raising this issue on appeal because he did not properly preserve it for review.[16] He made no objection to the *Allen* charge, requested no further instruction, and failed to renew his general objection to the jury charge. As a result, we have nothing

---

[11] *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992); see also *Meders v. State*, 260 Ga. 49, 54 (2) (389 SE2d 320) (1990) (constitutional issue not raised below is not preserved for appeal).

[12] *Sims v. Smith*, 228 Ga. 136, 137 (184 SE2d 347) (1971); see also *Dobbs v. State*, 245 Ga. 208, 209 (2) (264 SE2d 18) (1980) (defendant's general right to be present during trial does not extend to post-verdict procedures such as a motion for new trial, where questions of law, not fact, are determined).

[13] 216 Ga. App. 236, 237 (2) (454 SE2d 156) (1995).

[14] Id. (citing *Stidem v. State*, 246 Ga. 637, 639 (3) (272 SE2d 338) (1980)).

[15] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896). The charge essentially advises the jury of the desirability of agreement if possible and instructs them to examine the issues with candor and fairness and with deference to the opinions of the other jurors. See *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986).

[16] *Peterson v. State*, 212 Ga. App. 31, 32 (2) (441 SE2d 267) (1994).

to review.[17]

7. Pena objects to testimony by Layish regarding post-traumatic stress disorder or syndrome because it has not been accepted in Georgia as a verifiable and admissible scientific principle. At issue are two questions posed to Layish. After Layish was qualified as an expert in child therapy, the State asked her to describe the post-traumatic stress syndrome. At the end of her direct testimony, the State asked if some of the symptoms that Layish had testified E. P. exhibited during counseling were consistent with post-traumatic stress syndrome, and she said that they were.

Again, Pena's counsel failed to object to the testimony at trial but urges that it should be considered under the plain error standard. For the following reasons, we decline to do so. Layish did not testify that she had actually diagnosed E. P. with post-traumatic stress syndrome.[18] In addition, Pena presented an expert psychologist who testified about post-traumatic stress syndrome and what impact it may have on a child's grades. One of Pena's defenses was that if E. P. had actually been abused, her grades at school would have suffered. The jury was thus presented with conflicting expert testimony on the syndrome and on whether E. P. had symptoms consistent with it. We do not find that the disputed testimony presents an exceptional circumstance justifying review under the plain error standard.

8. The trial court charged the jury that "when you consider the evidence in this case, if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement." Pena contends that the court's use of the word "evidence" instead of "testimony" instructed the jury to accept testimonial evidence over all other forms of evidence. Relying on *Noggle v. State*,[19] he also contends that this type of charge is inappropriate because it is misleading.

The charge given by the court was taken verbatim from the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1991). It does not suggest or instruct that testimonial evidence be given greater weight than other evidence.

The charge given in *Noggle* was that " 'when witnesses appear and testify in a case such as this, they are presumed to speak the truth unless they are impeached in some manner provided by law.' "[20] The Supreme Court found that charge constitutional, but misleading,

---

[17] Id.

[18] Cf. *Prickett v. State*, 220 Ga. App. 244, 246-247 (3) (469 SE2d 371) (1996), overruled on other grounds, *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

[19] 256 Ga. 383 (349 SE2d 175) (1986).

[20] Id. at 385 (4).

and recommended that its use be discontinued.[21] The charge given here was not the "presumption of truthfulness" charge disapproved in *Noggle*. It contains no suggestion that an unimpeached witness must be believed, but merely urges the jury to attempt to reconcile conflicting evidence before considering the credibility of witnesses.[22] We find no error in the charge as given.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 21, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000 — 

*Berk & Moss, Stephen J. Berk, Brian Steel*, for appellant.
*Patrick H. Head, District Attorney, Marsha S. Lake, Maria B. Golick, Assistant District Attorneys*, for appellee.

---

[21] Id. at 386.
[22] See *Mallory v. State*, 271 Ga. 150, 151 (2) (517 SE2d 780) (1999).