## A04A0985. LEONARD v. THE STATE.
### (603 SE2d 82)

PHIPPS, Judge.

After a jury trial, Richard Roger Leonard was convicted of burglarizing the home of Dennis Williamson. Leonard's motion for new trial was denied after a hearing. On appeal, he contends that the evidence was insufficient to support his conviction and that his trial counsel was ineffective. We affirm.

1. Leonard challenges the sufficiency of the evidence.

> On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

The state's evidence showed that on February 12, 1998, Williamson and his wife had left their home to go to work at their company by about 9:00 a.m., as they routinely did. Their housekeeper, who arrived at their residence after they left, called the Williamsons between 11:00 a.m. and 12:00 p.m. and reported that she had discovered that their home had been broken into. A back door had been pried and kicked open, and much of the Williamsons' jewelry had been stolen.

Meanwhile, at about 9:30 a.m., Leonard was seen driving slowly and braking on the street just outside the entrance to the Williamsons' subdivision. Around noon that day, Leonard sold to a pawnshop as "scrap jewelry" pieces of the Williamsons' stolen jewelry.

An investigator of the county sheriff's department asked Leonard why he had been in the vicinity of the Williamsons' subdivision around the time of the burglary and how he had come to possess the

---

[1] (Footnote omitted.) *Faulkner v. State,* 260 Ga. App. 794 (581 SE2d 365) (2003).

items he sold. Leonard answered that he had been traveling to visit a friend. Leonard claimed that he had retrieved the items he sold from junk cars at a junkyard where he was then working. But according to the investigator, the items recovered from the pawnshop were "clean" and did not appear to have "wallered around in a floorboard of a [vehicle] and stomped on." And one piece, he recalled, looked like it had been "intentionally twisted."

The state's evidence further showed that Leonard had worked a few years at the Williamsons' family business until he was fired in late 1997 or early 1998. A few weeks before the burglary, Leonard had asked Williamson to hire him again, but Williamson refused. There was also evidence that Leonard had been to the Williamsons' home and was familiar with its layout and contents.

Leonard, the sole defense witness, denied committing the burglary. He admitted driving past the Williamsons' subdivision at around 9:00 or 9:30 on the morning in question. And he admitted that he had slowed down at the subdivision entrance, explaining that he had done so only because of a sharp curve in the road at that point. He denied going to the Williamsons' residence that day, explaining that he had been on his way to pick up lumber from a relative. Because there was too much lumber to transport in his car, he went to ask a friend, whom he knew only as "Kevin," to assist him by allowing the use of his pickup truck. Leonard and Kevin then went to Leonard's relative's house and retrieved the lumber in Kevin's truck. Leonard testified that to pay Kevin for the use of the truck, he sold some items of scrap jewelry to the pawnshop. Leonard claimed that he had collected the items from junk cars at various junkyards, one of which he referred to as "William Alewine's."

The jury was authorized to reject Leonard's explanation of how he came to possess some of the Williamsons' stolen jewelry. Furthermore, Leonard was seen in the vicinity of the Williamsons' home around the time the burglary was committed. Contrary to Leonard's contention, the evidence was sufficient to support his conviction.[2]

2. Leonard contends that the trial court erred in denying his motion for new trial, arguing that he received ineffective assistance of counsel. To prevail on this claim, Leonard must establish, pursuant to *Strickland v. Washington*,[3] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[4] Both the performance and prejudice components of the

---

[2] See *Gray v. State*, 260 Ga. App. 197, 198 (1) (581 SE2d 279) (2003); *Slater v. State*, 209 Ga. App. 723, 724 (1) (434 SE2d 547) (1993).

[3] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[4] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

ineffectiveness inquiry are mixed questions of law and fact.[5] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings and credibility determinations unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[6]

Leonard claims that trial counsel did not confer with him in preparing for trial or in deciding on a trial strategy. In addition, Leonard argues, trial counsel should have called as defense witnesses Kevin Billings and William Alewine. However, Leonard failed to present the testimony of either person at the motion for new trial hearing.

Trial counsel outlined at the motion for new trial hearing his investigation of the case and the development of the defense strategy and tactics. He stated that he had met with Leonard as many as eight times before the trial. Each time, they discussed the facts of the case. Meanwhile, his investigation of the case had included interviewing the owner and an employee of the pawnshop. Trial counsel testified that he had discussed with Leonard trial strategy and tactics, including whether to call Billings and Alewine as defense witnesses, and that he and Leonard had agreed that no other witnesses would be called so as to preserve the right to conclude final arguments to the jury.

Trial counsel stated that Leonard had named only one potential alibi witness — Billings. Trial counsel met with Billings and discovered that he could not account for Leonard's whereabouts during the entire pertinent time period. Furthermore, trial counsel determined that Billings had an "extremely rough" appearance and would not have been a credible witness. Trial counsel testified that he had told Leonard that Billings could not account for the entire pertinent time period, and that because he believed Billings would not be credible, Billings might actually prejudice the defense.

Trial counsel also explained at the post-trial hearing why Alewine, the father of the owner of Alewine's Junkyard, had not been called as a defense witness. Leonard had given trial counsel a brief, written statement from Alewine. The note stated that Leonard had been allowed to look through junk cars at Alewine's Junkyard, but it made no reference to what Leonard found in them. When trial counsel followed up on the note, Alewine told him that he was aware of Leonard's circumstances and assured counsel that Leonard had found "no kind of jewelry like that" in Alewine's junk cars. In addition, Alewine told trial counsel that there was some suspicion at the

[5] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).
[6] *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000).

junkyard that Leonard had taken items that he had not been given permission to take. Trial counsel thus determined that Alewine would not be a favorable witness for the defense.

Strategic and tactical decisions are the exclusive province of the attorney after consultation with the client.[7] Such decisions made after thorough investigation are virtually unchallengeable, providing no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them.[8] Deciding which defense witnesses to call is a matter of trial strategy and tactics.[9] And declining to present evidence to preserve the final word in closing argument is a well-recognized trial tactic.[10]

The court was authorized to find that trial counsel adequately investigated the case and consulted with Leonard regarding trial preparation, strategy, and tactics. And trial counsel's decision not to call Alewine and Billings, thus preserving the final word in closing argument, was reasonable trial strategy. Furthermore, without Alewine's and Billings's testimony at the post-trial hearing, no evidence shows what they would have said at the trial. Therefore, it would be pure conjecture to conclude that their testimony would have helped the defense.[11]

Because Leonard has failed to satisfy either prong of *Strickland*, we conclude that the trial court did not err in denying Leonard's motion for new trial.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JULY 27, 2004.

*Ramon J. Fajardo*, for appellant.
*Robert W. Lavender, District Attorney*, for appellee.

---

[7] *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000).

[8] Id.

[9] See *Roberts v. State*, 263 Ga. 807, 808 (2) (b) (439 SE2d 911) (1994).

[10] See *Washington v. State*, 276 Ga. 655, 659 (3) (c) (581 SE2d 518) (2003); *George v. State*, 257 Ga. App. 645, 647 (2) (572 SE2d 644) (2002).

[11] See *Baker v. State*, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001).