A05A0958, A05A1199. THE STATE v. CLARK (two cases).

(615 SE2d 143)

PHIPPS, Judge.

The state appeals from the trial court's order granting Robert Clark's post-conviction motion under OCGA § 5-5-41 (c) (13) for DNA testing. In Case No. A05A1199, the state filed a direct appeal of the trial court's order. This court subsequently granted the state's motion for an emergency stay and application for a discretionary appeal (Case No. A05A0958). In the order granting the discretionary appeal, we instructed the parties to address the issue of our jurisdiction. Subsequently, we granted the state's motion to consolidate its appeals.

The state asserts it has the right to directly appeal the trial court's order granting post-conviction DNA testing to Clark and that the trial court erred by: (1) ordering that a slide be tested by an

uncertified laboratory in violation of OCGA § 5-5-41 (c) (9); (2) improperly shifting to the state the burden of proving that the laboratory selected by Clark is uncertified; (3) failing to determine who should be responsible for paying for the tests and failing to designate the fund from which it should be paid; and (4) neglecting to order that a sample of Clark's DNA be taken and placed in the DNA data bank as required by OCGA § 5-5-41 (c) (9). For reasons that follow, we find that the state has a right to appeal directly based on the facts and circumstances of this particular case and we dismiss Case No. A05A0958. Because the trial court erred by failing to follow the mandates of OCGA § 5-5-41 (c) when it fashioned its order for post-conviction DNA testing, we reverse in Case No. A05A1199.

The record shows that Clark was convicted of kidnapping, rape and armed robbery in 1982 and received two life sentences, plus twenty years imprisonment. In December 2003, Clark filed a petition for post-conviction DNA testing requesting that physical evidence that might contain DNA be tested. The state opposed the motion generally, but reserved the right to supplement or amend its position after investigating the case. The trial court scheduled a hearing on the motion in March 2004. At the hearing, Clark requested DNA testing of two slides made from swabs of the victim's vagina and a shirt she wrapped around her lower body to cover herself after the rape. At the conclusion of the hearing, the trial court ruled that the Georgia Bureau of Investigation ("GBI") would test the shirt for DNA evidence and reserved its ruling on the two slides. In the portion of its written order granting the petition for testing of the shirt, the trial court concluded that Clark was indigent and ordered that any cost for the testing be paid from the state's fine and forfeiture fund. The order did not require Clark to submit a reference sample for analysis by the GBI. It did however, state:

> In the event that the Court orders the two slides to be tested, the testing of the slides shall be performed by a laboratory that meets the standards of the DNA advisory board in accordance with OCGA § 5-5-41 (c) (9). Both the State and Defense counsel will have an opportunity to submit a list of suitable testing facilities that are able to perform STR DNA testing on slides. If the State and Defense counsel are unable to agree on a DNA testing facility to perform such tests, either party may set a hearing before the Court on the issue and the Court will hear and take into consideration the views of the parties before ordering which DNA testing facility shall perform the testing.

After the hearing, Clark obtained a supplemental order requiring the GBI to test a towel and another shirt worn by the victim, in addition to the one wrapped around her lower body.

After the GBI's investigation failed to identify any semen stains on the items, Clark moved for the release of the shirts, as well as the slides, for testing by Dr. Edward Blake, director of Forensic Science Associates ("FSA"). The state requested a hearing on the motion because it opposed Clark's proposed use of FSA for the testing. The state did not oppose Clark's request for additional DNA testing.

The state objected to the use of Dr. Blake because his laboratory did not meet the quality assurance standards of the DNA advisory board. According to the state, the laboratory is not certified because it is not audited on an annual basis to ensure compliance with the DNA advisory board's standards. It is undisputed that Dr. Blake's laboratory has never been certified because Dr. Blake made a personal decision that it would not be certified. At the start of the hearing, Clark's counsel from the Innocence Project offered to pay for any testing at Dr. Blake's laboratory.

At the conclusion of the hearing, the trial court ruled orally that the clothing and one slide would be delivered to Dr. Blake and that the state could keep the remaining slide for testing by a laboratory acceptable to the state. The state asked the trial court to prepare a written order so that it could evaluate its appeal options.

In its written order, the trial court required the state to pay for the testing at a qualified laboratory and the Innocence Project to pay for the testing at Dr. Blake's laboratory. It also ordered that the testing would take place in two stages. In the first stage, the two laboratories would try to obtain a DNA profile from the slides. After one of the laboratories completed its testing, a reference sample would be obtained from Clark and shipped to both laboratories. In the second stage, the laboratories would independently obtain a DNA profile from Clark's sample and compare it to any DNA profile obtained from the victim's vaginal slides. The court made no provision for testing of a reference sample by the GBI for inclusion in the DNA data bank.

1. The state contends that the trial court's order granting DNA testing to Clark is a final order that is directly appealable. We agree. OCGA § 5-5-41 (c) (13) provides the state with the right to appeal a trial court's order granting a motion for DNA testing.[1] Clark filed only a post-conviction motion seeking DNA testing; he did not file an extraordinary motion for new trial and the trial court has ruled on the

---

[1] The state has no right to appeal in a criminal case unless it is provided by statute. *State v. Martin*, 278 Ga. 418, 418-419 (603 SE2d 249) (2004).

merits of the only motion pending before it.[2] OCGA § 5-6-34 (a) (1) defines a final judgment from which a direct appeal may be taken as "the case is no longer pending in the court below." And,

> even though an order does not specify that it is a grant of final judgment, it nevertheless constitutes a final judgment within the meaning of OCGA § 5-6-34 (a) (1) where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court.[3]

In this particular case, there is no issue remaining for the trial court to resolve; it has issued its final ruling on Clark's motion for DNA testing, and the state has no further recourse in the trial court. Consequently, the trial court's order is a final judgment that the state can directly appeal pursuant to OCGA § 5-5-41 (c) (13).

The Supreme Court's opinion in *Crawford v. State*[4] does not require a different result. In *Crawford*,[5] the defendant in a death penalty case filed both an extraordinary motion for new trial and a motion for DNA testing. After both of these motions were denied, Crawford filed a direct appeal, which the Supreme Court construed as an application for discretionary appeal and granted. In its opinion, the Court ruled that the defendant was not entitled to a direct appeal of the trial court's denial of his motion for DNA testing under OCGA § 5-5-41 (c) (13) and reasoned:

> We conclude that [the statutory] language emphasizes the General Assembly's intent that the denial of a motion seeking DNA testing made as part of an extraordinary motion for new trial be recognized as an appealable issue, but we also conclude that the filing of an application for discretionary appeal is the proper form of appeal in such a case. Concluding otherwise would yield the absurd result that the denial of an extraordinary motion for new trial would be appealable only as a discretionary appeal while the denial of a motion seeking DNA testing filed as *part* of that extraordinary

---

[2] Although the state requested that the record before us include only Clark's petition for post-conviction DNA testing and everything filed thereafter, Clark's counsel acknowledged during oral argument that no extraordinary motion for new trial was filed before the trial court issued its ruling on DNA testing.

[3] *Vurgess v. State of Ga.*, 187 Ga. App. 700, 700-701 (1) (371 SE2d 191) (1988) (citation and punctuation omitted) (finding order requiring party to pay funds into court registry directly appealable).

[4] 278 Ga. 95, 96 (1) (597 SE2d 403) (2004).

[5] Id.

motion for new trial would be appealable directly.[6]

*Crawford*[7] is distinguishable because, in this case, Clark did not move for DNA testing as part of an extraordinary motion for new trial, presumably because Clark does not yet know if the testing will reveal grounds for a new trial.[8] Instead, he filed only a motion for DNA testing and he might not ever file an extraordinary motion for new trial. Thus, a direct appeal under the facts of this case will not create the absurd result the Supreme Court sought to avoid in *Crawford*.[9]

2. Having determined that we have jurisdiction, we now turn to the merits of the state's appeal. The state contends that the trial court violated OCGA § 5-5-41 (c) (9) when it ordered the state to provide evidence to Dr. Blake's laboratory for testing. This Code section provides:

> If the court orders testing pursuant to this subsection, the court shall order that the evidence be tested by the Division of Forensic Sciences of the Georgia Bureau of Investigation. In addition, the court may also authorize the testing of the evidence by a laboratory that meets the standards of the DNA advisory board established pursuant to the DNA Identification Act of 1994, Section 14131 of Title 42 of the United States Code, to conduct the testing. The court shall order that a sample of the petitioner's DNA be submitted to the Division of Forensic Sciences of the Georgia Bureau of Investigation and that the DNA analysis be stored and maintained by the bureau in the DNA data bank.[10]

The parties agree that Dr. Blake's laboratory is uncertified by the DNA advisory board.

Clark argues that the language in this Code section is not mandatory and that the trial court had the discretion to order the testing performed by Dr. Blake, who Clark claims is a preeminent forensic DNA analyst. In support of this argument, Clark points out that the lack of accreditation does not render DNA test results obtained by an unaccredited laboratory inadmissible in Georgia; instead, it goes to the weight of the evidence.[11] Clark also points out that the trial court's orders ensure that all of the evidence will be

---

[6] Id. (emphasis in original).

[7] Id.

[8] Clark recognizes in his brief that the testing "may well confirm [his] guilt."

[9] Supra.

[10] OCGA § 5-5-41 (c) (9).

[11] *Bluain v. State*, 242 Ga. App. 125, 130 (2) (529 SE2d 155) (2000) (lack of national

examined by an accredited laboratory; that the GBI has already examined the clothing; and that one of the vaginal slides will be tested by an accredited laboratory acceptable to the state. Thus, he argues, the state's interest in the evidence will not be harmed by additional testing of the clothing and one of the vaginal slides by an unaccredited laboratory.

The state responds that useful DNA evidence may be present on only one of the slides and that if an uncertified laboratory performs the test on that slide, its evidentiary value may be forever tainted, particularly if it is obtained by an uncertified laboratory in violation of OCGA § 5-5-41 (c) (9). Thus, if the DNA evidence on that slide exonerated Clark, the state's ability to prosecute another perpetrator whose identity was revealed by the testing would be compromised even if any such results were to be found admissible.[12] Additionally, results from tests performed by unaccredited laboratories cannot be permanently uploaded into the DNA data bank. Thus, if the evidence is completely destroyed during the testing, the state could not have it retested by an accredited laboratory so that it could be permanently placed into the DNA data bank.

The trial court's first order specified that any future testing of both slides would be done "by a laboratory that meets the standards of the DNA advisory board in accordance with OCGA § 5-5-41 (c) (9)." Based on the clear and unambiguous language of OCGA § 5-5-41 (c) (9), we find that the trial court erred when it ordered the state to provide the evidence to the uncertified laboratory for testing. The General Assembly intended post-conviction DNA testing to be performed only by qualified laboratories and the trial court has no discretion to ignore this statutory mandate.

3. The state asserts the trial court erred by ordering the state to pay for the testing at the accredited laboratory without following the statutory mandate to "determine . . . responsibility for payment of the cost of testing," and by failing to designate the fund from which the payment should be made, in violation of OCGA § 5-5-41 (c) (8).[13] We find no merit in this claim. OCGA § 5-5-41 (c) (8) directs that if a

---

accreditation by laboratory went to the weight of the testing results and not its admissibility in defendant's trial).

[12] We express no opinion about whether DNA testing performed by a nonaccredited laboratory would be admissible in a post-conviction proceeding.

[13] OCGA § 5-5-41 (c) (8) provides in full:

> If the court orders testing pursuant to this subsection, the court shall determine the method of testing and responsibility for payment for the cost of testing, if necessary, and may require the petitioner to pay the costs of testing if the court determines that the petitioner has the ability to pay. If the petitioner is indigent, the cost shall be paid from the fine and forfeiture fund as provided in Article 3 of Chapter 5 of Title 15.

defendant is indigent the cost of testing shall be paid from the state's fine and forfeiture fund. Since the trial court determined in its first order that Clark was indigent and that payment for any DNA testing would be paid from the fine and forfeiture fund, it was unnecessary for the court to restate this in its final order, and the trial court therefore complied with OCGA § 5-5-41 (c) (8).

4. The state's remaining contention is that the trial court erred by not requiring a sample of Clark's DNA to be submitted to the GBI for analysis and placement in the DNA data bank at the same time that it granted him testing of the slides. The state argues that OCGA § 5-5-41 (c) (9) provides for an immediate quid pro quo. If a defendant obtains an order for post-conviction DNA testing, a reference sample must be provided to the GBI for inclusion in the DNA data bank and this should occur simultaneously. The State asserts that it must have the opportunity to compare Clark's DNA profile to any other samples from unsolved past crimes stored in the data bank. If the DNA evidence exonerates Clark in this case, the state is concerned that it might release him from custody when he might be a viable suspect in another unsolved crime.

Clark asserts that this is really a nonissue because his DNA profile should already be in the DNA data bank based upon OCGA § 24-4-60.[14] Clark does not assert that his DNA profile is already in the data bank and there is no proof of such in the record. Clark also asserts that this issue is premature because the court can order that the reference sample be provided to the GBI at a later date.[15]

We find the state's arguments persuasive. The trial court has a statutory duty to order that a sample be provided to the GBI for inclusion in the DNA data bank and it erred by failing to do so in its final written order granting the motion for DNA testing.

5. Our holding in Division 2 renders the state's remaining claim of error moot.

*Appeal dismissed in Case No. A05A0958. Judgment reversed in Case No. A05A1199. Johnson, P. J., and Mikell, J., concur.*

---

[14] The state points out that Clark's DNA profile may or may not already be stored in the data bank. OCGA § 24-4-60, requiring testing of convicted sex offenders within 30 days of incarceration, was enacted in 1992 and does not apply retroactively. Although the 2000 amendment authorized obtaining and analyzing samples of sex offenders incarcerated in 2000, the legislature acknowledged that limited funding might prevent the GBI from fully implementing this provision. See Ga. L. 2000, p. 1075, § 6.

[15] In the alternative, Clark asserts that the state waived its right to assert this issue on appeal because it opposed a previous consent order drafted by Clark which did provide for reference samples to be collected from Clark. We find no merit in this claim. The record shows that the state opposed the alleged consent order because it addressed unspecified matters that were not ordered by the court, not provided to the state, and not discussed with the state. It does not show that the state specifically opposed the taking of reference samples from Clark.

DECIDED MAY 9, 2005 —
RECONSIDERATION DENIED MAY 24, 2005.

*Patrick H. Head, District Attorney, W. Thomas Weathers III, Amy H. McChesney, Assistant District Attorneys,* for appellant.
*Aimee R. Maxwell, Christopher J. McFadden,* for appellee.