A07A0204. PALMER v. THE STATE.

(650 SE2d 255)

BERNES, Judge.

A Fulton County jury found Edward Maurice Palmer guilty of armed robbery, rape, and aggravated sodomy. Palmer appeals, contending that the trial court erred in (i) failing to direct a verdict of acquittal on all counts due to insufficient corroboration of his accomplice's testimony and (ii) failing to direct a verdict of acquittal as to armed robbery because the proof of the crime was not consistent with the indictment. Palmer also argues that the trial court erred in removing a trial juror, in charging the jury, and in denying funds for a DNA expert. Palmer further claims that the State made an impermissible argument as to his failure to testify at trial, and that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence." *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). So viewed, the evidence demonstrates that at around 9:00 p.m. on March 30, 2002, the victim parked her car outside her Fulton County home. As she put her key in the door, two men approached the victim from behind. Their faces were masked,

---

and one was carrying a gun. Both were wearing something on their hands. The victim testified that her assailants were very thin and "much younger" than herself, and she described the gun as blackish, greyish, with a waffle on the handle and a very small hole.

The gunman led the victim to her back bedroom, apparently "knowing full well where it was," where he forced her to have sexual intercourse at gunpoint. He called the second assailant into the bedroom, who raped the victim while she was forced to perform oral sex on the gunman. The gunman put his weapon inside the victim's vagina and threatened to shoot. A third person, who appeared to be older than the two assailants, also entered the house and began going through the victim's belongings, but he left without assaulting the victim.

The two assailants stole the victim's purse, her cellular telephone, her Blackberry, and approximately $20. They were very angry that the victim did not have more money. She told them that she would go to the automated teller machine and get each $200. They let the victim leave by herself, and she drove to a gas station and asked an employee to call the police. She then went to the hospital where she underwent a "rape kit" exam.

Police traced calls made on the victim's cellular telephone to Quintez Griffin. Griffin was arrested, admitted to his involvement in the crimes against the victim, and named Palmer as his accomplice. Griffin agreed to testify against Palmer in return for a lighter sentence. According to Griffin, on the evening of the crime he and Palmer entered the victim's house through a window and searched the premises, but did not find anything. They decided to wait until the victim returned in case she had money. Palmer and Griffin got a gun from a friend, and they sat on the porch of the house next door and tied their shirts around their heads. According to Griffin, when the victim returned home Palmer pointed the gun at her as she approached the front door. They went inside, and Palmer and then Griffin had sexual intercourse with the victim.

Police seized a black pellet gun from Palmer on April 7, 2002 in an encounter unrelated to the investigation into the crimes against the victim. At trial, the victim identified this weapon as the weapon used by the gunman.

1. Palmer claims that his identity was established solely through Griffin's testimony because the victim was unable to identify her masked attackers. He contends that the evidence did not sufficiently corroborate Griffin's testimony, and that the trial court therefore erred in denying his motion for a directed verdict on all charges. We disagree.

> The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . .

OCGA § 24-4-8. "Slight evidence of a defendant's identity and participation from an extraneous source is all that is required to corroborate the accomplice's testimony and thus support the verdict." (Punctuation and footnote omitted.) *Brown v. State*, 268 Ga. App. 24, 26 (1) (601 SE2d 405) (2004). Here, Palmer's possession of the gun identified by the victim as used in the crime was sufficient to corroborate Griffin's testimony. See *Eschena v. State*, 203 Ga. App. 621 (1) (417 SE2d 214) (1992) (evidence that defendant possessed weapon and ski mask identified as used in commission of the crime was sufficient to corroborate co-defendant's testimony).

Palmer argues that the evidence that the gun used in the crime was discovered in his possession was not evidence from an extraneous source in light of Griffin's trial testimony. According to Griffin, Palmer had the gun when the two left the crime scene, but Palmer left the gun at Griffin's house and Griffin gave it back to Palmer a day or two later. Palmer argues that if Griffin had possession of the gun he could have given it to anyone after the crime had occurred, becoming both the source of the accomplice testimony and the evidence corroborating his testimony. However, Griffin's testimony that he had possession of the gun for some time after the crime goes to the weight of the evidence, but does not render the evidence that Palmer was in possession of the weapon used in the crime insufficient as a matter of law to corroborate his accomplice's testimony. "The sufficiency of the corroborating evidence is a matter for the jury, and if the verdict is based upon the slightest evidence of corroboration connecting an accused to a crime, even if it is circumstantial, it is legally sufficient." (Footnote omitted.) *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

2. Palmer argues that the trial court erred in failing to grant a directed verdict of acquittal as to armed robbery. We disagree.

The indictment specified that Palmer committed armed robbery "by use of a pistol, an offensive weapon." Palmer contends that the proof at trial did not show that he committed the crime in the manner specified in the indictment because the pellet gun shown to be used by the assailants was not a pistol. "If the indictment sets out the offense as done in a particular way, the proof must show it so, or there will be a variance." (Citations, punctuation and emphasis omitted.) *Ross v. State*, 195 Ga. App. 624, 625 (1) (b) (394 SE2d 418) (1990). However,

Palmer failed to raise the issue at the time of his motion for directed verdict, and the record fails to demonstrate he raised the fatal variance issue before the trial court. The issue is therefore waived for purposes of appeal. *Scott v. State*, 254 Ga. App. 728, 729 (1) (a) (563 SE2d 554) (2002).

In any case, Palmer's contention is without merit. We have previously concluded that where an indictment alleged that armed robbery was committed by use of a "handgun," and the evidence showed that the defendant used a BB gun, there was no fatal variance. See *Johnson v. State*, 266 Ga. App. 898, 900 (2) (598 SE2d 551) (2004). Similarly, there is no fatal variance between the indictment's allegation that the armed robbery at issue was committed through the use of a pistol and the evidence that the weapon used was a pellet gun. "The indictment did not specify whether the [pistol] shot bullets or [pellets], nor was such essential to establish the crime." Id. See, e.g., *Jackson v. State*, 248 Ga. App. 7, 9-10 (3) (545 SE2d 148) (2001) (offensive weapon includes instrumentalities which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use).

3. Palmer further contends that the trial court erred in removing a trial juror without showing that the juror was disqualified. We find that Palmer acquiesced to the juror not serving and cannot complain on appeal.

Following jury selection, but before the introduction of evidence, juror W. R. told the trial court that she had incorrectly represented during voir dire that her sister-in-law worked for the Fulton County solicitor-general's office. In fact, according to W. R., her sister-in-law was a public defender in the juvenile court. Arguing that the State had been misinformed, the prosecutor asked that W. R. be dismissed from the jury and that the alternate juror be used. Defense counsel argued that W. R. should remain on the panel. The trial court decided to say nothing to W. R., and to allow W. R. and an alternate juror to hear evidence. The trial court asked the prosecutor to "reflect," and ruled that if the prosecutor maintained her position, then W. R. would not serve on the jury, but that otherwise W. R. would serve as a deliberating juror.

The following day, and before the jury was charged, the trial court asked counsel if W. R.'s sister-in-law had previously represented the defendant. A discussion between counsel and, at one point, Palmer's mother, adduced that W. R.'s sister-in-law was a supervisor in the public defender's office, and attorneys from that office had initially represented Palmer, who was a juvenile. Because of a conflict in the public defender's office, defense counsel had stepped in to represent Palmer. Defense counsel got his "paperwork" on the case from an attorney who was supervised by W. R.'s sister-in-law.

After hearing the foregoing, the trial court announced that under the circumstances it was appropriate that W. R. not serve as a juror. Defense counsel responded, "yes, ma'am." The trial court then asked defense counsel if he disputed what had been discussed, and that defense counsel should "feel free to say so," but that if W. R.'s sister-in-law was the attorney in question, then "it is, in fact, the same attorney who would have been the reason that you are in this case." Defense counsel responded, "Right, okay."

In view of the foregoing, we conclude that Palmer acquiesced to W. R. not serving on the jury, and the issue is waived for purposes of appeal. "[A] litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further." (Citation omitted.) *Payne v. State*, 273 Ga. App. 483, 485-486 (3) (615 SE2d 564) (2005).

4. Palmer contends that he should be granted a new trial because the prosecutor made an impermissible comment on his failure to testify during closing. However, Palmer failed to object to the prosecutor's closing argument and thus waived this argument on appeal. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

5. Palmer claims that the trial court erred in charging the jury. Again, we disagree.

(a) The trial court charged the jury:

A person commits the offense of armed robbery when, with intent to commit theft, that person takes property of another from the person or immediate presence of another by use of an offensive weapon or by any replica, article, or device having the appearance of such a weapon.

Palmer argues that the only method of committing armed robbery specified by the indictment was through the "use of a pistol, an offensive weapon," but given the charge and the facts in evidence that the jury may have convicted Palmer of armed robbery by a replica of an offensive weapon. "The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment." (Citation omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

Here, evidence showed only that the pellet gun used by Palmer was a weapon, not a facsimile, article, or device having the appearance of a weapon. See, e.g., *Herndon v. State*, 253 Ga. App. 543, 548 (4) (559 SE2d 749) (2002) (though broken, evidence showed that handgun used in the crime was an actual handgun, not a replica).

Further, the trial court instructed the jury that they would be authorized to find Palmer guilty of armed robbery if they found or believed beyond a reasonable doubt that Palmer, among other things, took certain property from the victim "by use of a pistol, an offensive weapon . . . as alleged in the indictment." "Considering the charge in its entirety in connection with the evidence adduced at trial, the jury could not have been misled into convicting appellant of armed robbery by any means other than as charged in the indictment." (Citation omitted.) *Daniels v. State*, 207 Ga. App. 689, 691 (2) (428 SE2d 820) (1993).

(b) Palmer also claims the trial court erred in failing to charge the jury that in a felony case there can be no conviction based on the testimony of an accomplice unless it is corroborated by other evidence connecting the accused to the crime and tending to show his participation. See OCGA § 24-4-8; *Cox v. State*, 243 Ga. App. 790, 791 (534 SE2d 464) (2000). Palmer admits his counsel did not request the charge. Generally, if the defendant does not request a charge in writing, the trial court does not err in failing to give the charge. See *Slaughter v. State*, 227 Ga. App. 739, 741 (2) (490 SE2d 399) (1997). Palmer nevertheless argues that the trial court committed a substantial error that was harmful as a matter of law by failing to give the charge sua sponte. See OCGA § 5-5-24 (c). Our Supreme Court precedent compels us to reject Palmer's claim. Where, as here, the State does not rely solely upon an accomplice's testimony to connect the defendant to the crime, it is not error for a trial court to fail to sua sponte charge the jury as to the necessity for corroboration. See *Carter v. State*, 227 Ga. 788, 794 (5) (183 SE2d 392) (1971); *Robinson v. State*, 207 Ga. 337, 338 (1) (61 SE2d 475) (1950).

6. Palmer contends that the trial court erred in denying his motion for funds to hire a DNA expert to test evidence recovered from the crime scene using more advanced techniques than that employed by the State crime laboratory. We disagree. "The grant or denial of a post-conviction motion for the assistance of an expert witness lies within the sound discretion of the trial court, and some special need for the witness must be demonstrated to the trial court." (Citation omitted.) *Robinson v. State*, 277 Ga. 75, 77 (3) (586 SE2d 313) (2003). See also *Totten v. State*, 276 Ga. 199, 200 (2) (577 SE2d 272) (2003) (post-trial request for investigation services lies within trial court's discretion).

Evidence adduced at trial showed that the victim's "rape kit" was tested by a forensic biologist employed by the Georgia Bureau of Investigation crime laboratory. According to the biologist, she was looking for either blood, semen, or saliva. Seminal fluid, but no spermatozoa, were present in the kit, and a DNA test could not be performed. According to the biologist, explanations for the lack of

sperm included that the seminal fluid came from someone who had a vasectomy, was sterile, or had not undergone puberty. Evidence adduced at the hearing on motion for new trial showed that the biologist had also tested two condoms recovered from the crime scene, but no sperm cells were found.

Following his conviction, Palmer moved for funds to hire an "expert of his choosing" to conduct an independent DNA test. He contended that Y-STR analysis, which had not been available to the State crime laboratory at the time of initial testing, would reveal the DNA sequencing of the "actual perpetrators." He further requested that certain evidence be turned over to his expert for testing.[1]

We conclude that the trial court did not err in denying Palmer's motion. By the time of Palmer's motion for funds to conduct his own test, the General Assembly had enacted OCGA § 5-5-41 (c), which provides an avenue for a person convicted of a serious violent felony, including rape, armed robbery, and aggravated sodomy, to obtain additional DNA testing of evidence where, as contended by Palmer, the requested DNA test was not available at the time of trial and the hypothesized test results raise a reasonable probability that the petitioner would have been acquitted if the test was previously available. See OCGA § 5-5-41 (c) (3) (B), (D); *Crawford v. State*, 278 Ga. 95, 97 (2) (a) (597 SE2d 403) (2004). Since OCGA § 5-5-41 (c) provides a method for Palmer to obtain additional testing, there was no special need for the trial court to fund an independent test on the grounds asserted. Further, under OCGA § 5-5-41 (c), the State's interest in DNA evidence obtained from utilizing the new testing technology is more likely to be protected than if the evidence is handed over to an expert of Palmer's choosing. "The General Assembly intended post-conviction DNA testing to be performed *only* by qualified laboratories." (Emphasis supplied.) *State v. Clark*, 273 Ga. App. 411, 416 (2) (615 SE2d 143) (2005) (also acknowledging the State's argument that if evidence was destroyed during testing by an unaccredited laboratory, the State could not have it retested by an accredited laboratory). Accordingly, we conclude that the trial court did not abuse its discretion in denying Palmer's motion for funds to hire a DNA expert of his choosing to test the evidence.

7. Palmer claims that his trial counsel was ineffective. In order to demonstrate ineffective assistance, Palmer was required to "show

---

[1] Palmer had previously moved for funds to conduct a post-conviction test without showing that new technology was available, and only speculating that the crime laboratory may have erred in its testing procedures. To the extent that Palmer also contends that the trial court erred in denying this motion, the trial court did not abuse its discretion in finding that no special need existed to hire an expert to perform an additional test. See, e.g., *Crenshaw v. State*, 244 Ga. 430, 431 (2) (260 SE2d 344) (1979).

that counsel's performance was deficient and that this deficient performance prejudiced his defense. The trial court's factual determinations with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous." (Citations omitted.) *Bennett v. State*, 266 Ga. App. 502, 504 (3) (597 SE2d 565) (2004).

(a) Palmer claims his trial counsel was deficient in failing to investigate the case and then present an alibi defense. We disagree.

According to trial counsel, he asked Palmer for a list of alibi witnesses, and Palmer told him of an aunt, a younger sister, and a coach. He investigated the potential witnesses, but they could not establish an alibi. According to counsel, he spoke with Palmer's mother and stepfather for a total of approximately ten to fifteen hours before trial. The mother did not know where Palmer was at the time of the crime. Trial counsel testified that Palmer's sister came to his office to tell him that Palmer was with her at a barbecue at approximately 10:00 p.m. on the evening of the crime. The mother and stepfather, however, never told counsel about a barbecue.

Palmer testified at the hearing on motion for new trial that he told his trial counsel that he was with his family from 7:00 to 9:00 p.m. during the evening of the crime, but that trial counsel did not ask Palmer to identify those family members. Palmer's mother and stepfather testified at the hearing on motion for new trial that Palmer was at home attending a family cookout on the evening that the crime occurred, and that they either relayed or attempted to relay this information to trial counsel. However, to the extent that their testimony differed, the trial court was entitled to believe the testimony of Palmer's trial counsel over that of Palmer and his mother and stepfather. See, e.g., *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002); *Dye v. State*, 266 Ga. App. 825, 830 (2) (d) (598 SE2d 95) (2004). Accordingly, evidence supports the conclusion that trial counsel adequately investigated Palmer's case. See *Leonard v. State*, 268 Ga. App. 745, 746-748 (2) (603 SE2d 82) (2004) (counsel was not ineffective where he met with his client and then met with the alibi witness identified by his client). Further, trial counsel was entitled to consider the sister's information about a barbecue to be less than credible, especially considering Palmer's mother and stepfather had not mentioned the barbecue during ten to fifteen hours of interviews. "[T]he court was authorized to find as fact that trial counsel's failure to call [Palmer's sister] was due to reasonable trial strategy, not a result of inadequate preparation." (Citation and punctuation omitted.) *Shannon v. State*, 275 Ga. App. 550, 551 (1) (621 SE2d 540) (2005).

(b) Palmer claims that his trial counsel was ineffective in failing to present Palmer's testimony. We disagree.

The trial court informed Palmer that it was up to Palmer to decide whether to testify. After consulting with Palmer, trial counsel informed the trial court that Palmer did not want to testify. The trial court asked Palmer if this was correct, and Palmer agreed.

According to trial counsel, he advised Palmer that it was not in Palmer's best interest to testify. Counsel believed that the State did not have a strong case, citing the lack of DNA evidence, the lack of identification by the victim, and the lack of physical evidence. Counsel thought that by testifying, Palmer "could open a can of worms that maybe didn't need to be opened." Palmer confirmed that trial counsel had advised him not to testify, and that Palmer agreed to go by his trial counsel's advice.

> As the testimony of [Palmer's] counsel makes clear, tactical decisions were made, based upon sound reasoning, that in light of the circumstances of the trial, it was not in [Palmer's] best interests to testify. Having been so advised, [Palmer] opted not to testify. Hence, [Palmer has] failed to satisfy [his] burden of showing that counsel was deficient.

(Footnote omitted.) *Chambers v. State*, 266 Ga. 39, 42 (3) (463 SE2d 887) (1995).

(c) Finally, Palmer contends that his trial counsel was deficient in failing to object when during closing argument the prosecutor referred to evidence that while Palmer had been at the Atlanta Police Department he had told his mother, who instructed him not to talk to the police, that "I want to tell my side." The prosecutor then argued, "What is his side? What does that mean?," and "What did he mean when he said he wanted to tell his side?" Palmer contends that the prosecutor impermissibly referred to his failure to testify. However, Palmer did not raise this ground of ineffective assistance before the trial court, and this issue is therefore waived. *Thompkins v. State*, 272 Ga. 835, 836-837 (2) (c) (536 SE2d 747) (2000).

For the foregoing reasons, we conclude that the trial court did not err in concluding that Palmer had not received ineffective assistance of counsel.

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JUNE 4, 2007 —<br>RECONSIDERATION DENIED JULY 24, 2007 — ■

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney*, for appellee.