## A11A2360. PULLEN v. THE STATE.
### (726 SE2d 621)

DOYLE, Presiding Judge.

Richmond County charged Charles Pullen with armed robbery,[1] hijacking a motor vehicle,[2] and possession of a firearm during the commission of a crime.[3] Following a jury trial, he was convicted of robbery by force,[4] as a lesser included offense of armed robbery, and theft by taking,[5] as a lesser included offense of hijacking a motor vehicle; he was acquitted of possession of a firearm during the commission of a crime. Pullen appeals the denial of his subsequent

---

[1] OCGA § 16-8-41 (a).
[2] OCGA § 16-5-44.1 (b).
[3] OCGA § 16-11-106 (b) (1), (2).
[4] OCGA § 16-8-40 (a) (1).
[5] OCGA § 16-8-2.

motion for new trial, arguing that the trial court erred (1) by allowing the State to ask leading questions of a prosecution witness in violation of his confrontation right; (2) by admitting evidence of third-parties' identifications of Pullen; and (3) in charging the jury. We affirm, for the reasons that follow.

Construed in favor of the verdict,[6] the record shows that Bradley Scott Denson drove to the bank one day, accompanied by Pullen, whom Denson knew as "Shy." When Denson went into the bank, he left his keys and Pullen in the car. After Denson returned home, he discovered that the key to his apartment was missing. Approximately a week later, on September 29, 2007, Denson's laptop computer, a CD player, his book bag, and a small amount of money were taken from his residence. Denson told police that he thought Shy had committed the burglary.

On October 5, 2007, at approximately 12:30 p.m., Pullen and three other men knocked on Denson's door, and Denson let them into his apartment. One of the men had a gun, and another had a knife and was wearing a black bandana over his face. Pullen questioned Denson about whether he gave Pullen's name to the police as a suspect in the previous burglary and asked whether Denson thought Pullen committed the burglary. The three men who accompanied Pullen attacked Denson, punching and kicking him, and the men took Denson's wallet, his cell phone, posters, food, beer, DVDs, a gaming device, and video games. Pullen took the key to Denson's Chevrolet Cavalier off his key ring, and the men took the Cavalier.

Denson told the police that Shy was one of the men involved in the attack, and he told police where Shy lived. Denson later identified Pullen in a photographic lineup and at trial. A review of Denson's cell phone records obtained after the incident reflect a phone call made on October 5, 2007, at 2:18 p.m. to a phone number assigned to Carolyn Watts, Pullen's aunt.

Denson's Cavalier was recovered thereafter. The title, which was in the vehicle at the time it was stolen, reflected Denson's purchase of the car from Wendy M. Chio-Hepler, his sister-in-law, on July 3, 2007. The title also contained a later entry listing Chio-Hepler as the transferor, but did not list a transferee. A separate entry listed Pullen as both the purchaser and the transferor/seller and listed Jellont J. Walker as the transferee/buyer.[7] The title did not reflect a transfer from Denson. According to Denson, the entries following the initial

---

[6] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[7] Walker is referred to in the trial court as both "Jerry Jellont Walker" and "Jellont Jerry Walker."

transfer of the vehicle to him from Chio-Hepler were added after the robbery.

Pullen testified at trial and denied burglarizing Denson's house, robbing him, or stealing his car. Instead, Pullen stated that he recognized Denson's laptop, which Pullen knew had been stolen, while visiting friends where men were selling stolen merchandise. According to Pullen, he called Denson and told him about the laptop, and Denson asked him to bring "the guys" over to his house. Pullen, accompanied by "J. J." and two other men, went to Denson's house.[8] Pullen said the men and Denson had a verbal altercation that became physical, after which Pullen and one of the other men left. Two days later, Pullen saw "J. J.," who asked him if he wanted to buy the Cavalier he was working on. According to Pullen, he did not want to purchase the car, but J. J., who did not have identification, asked him to "sign over" the car "to help [J. J.] sell his vehicle," and Pullen agreed, signing his own name to the title.

At the conclusion of the trial, the jury acquitted Pullen of possessing a firearm during the commission of a crime and found him guilty of the reduced charges of robbery by force and theft by taking. This appeal followed the denial of his amended motion for new trial.

1. Pullen argues that the trial court erred by permitting the State to ask leading questions of Jerry Walker, who had invoked his Fifth Amendment privileges, contending that the exchange between the prosecutor and Walker violated his Sixth Amendment confrontation right.

The State called Walker on direct examination and asked him whether he had purchased a vehicle from someone in the courtroom. Walker replied, "No, sir," and then invoked his Fifth Amendment privilege against self-incrimination. The State offered Walker immunity from prosecution in Richmond County, but the trial court agreed with defense counsel's assertion that the Richmond County District Attorney's Office could not offer Walker immunity with respect to any charges in Emanuel County or Swainsboro. Walker then proceeded to alternate denial of questions posed by the prosecution with assertion of his Fifth Amendment privilege when asked whether he signed the car title in Pullen's presence and whether Walker took a photograph, which Walker conceded depicted Pullen, of the person who sold him the car.

Pullen contends that the State violated his right to confront witnesses by asking leading questions of Walker, who was uncooperative. Although defense counsel objected at trial to the prosecutor

---

[8] Pullen denied that "J. J." was Jerry Jellont Walker.

asking leading questions, counsel did not argue that the exchange violated his Sixth Amendment right of confrontation. Thus, he has waived appellate review of this issue.[9] Even assuming that the exchange between the prosecutor and Walker violated Pullen's right to confrontation, however, Pullen is not entitled to a new trial because any such error was harmless.

> Whether a violation of the Confrontation Clause is harmless depends on a host of factors, including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.[10]

Following Walker's testimony, another witness testified that Walker, who had purchased a Cavalier, stated that he took a photograph of the man who sold him the car. Thus, Walker's testimony regarding the photograph is cumulative. Given the evidence in the case, including Pullen's signature on the car title, Denson's testimony, and Pullen's admissions that he signed the title, helped Walker sell the car, and was present during the assault on Pullen, any error in the State's direct examination of Walker was harmless.[11]

2. Pullen argues that the trial court erred by admitting a police investigator's testimony that two witnesses, who did not testify at trial, identified Pullen in a photographic lineup.[12] This enumeration presents no basis for reversal.

At trial, defense counsel objected to the investigator's testimony regarding the two witnesses' identification of Pullen on hearsay grounds, and the trial court instructed the witness, "Don't testify to what somebody else told you . . . unless it was the Defendant." Defense counsel did not move for a mistrial, request a curative instruction, or

---

[9] See *Sanders v. State*, 290 Ga. 445, 448 (3) (721 SE2d 834) (2012), citing *Heidler v. State*, 273 Ga. 54, 60 (7) (537 SE2d 44) (2000).

[10] (Punctuation omitted.) *Collum v. State*, 281 Ga. 719, 722 (2) (642 SE2d 640) (2007), quoting *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986).

[11] See *Ardis v. State*, 290 Ga. 58, 62-63 (2) (a) (718 SE2d 526) (2011); *Laye v. State*, 312 Ga. App. 862, 870-871 (2) (720 SE2d 233) (2011); *Silverio v. State*, 306 Ga. App. 438, 448 (5) (702 SE2d 717) (2010).

[12] The witnesses did not identify Pullen as having committed the alleged (or any) crimes. Instead, the investigator showed them a photographic lineup containing a photograph of the man Denson had identified as "Shy," and the men identified the person in the photograph as Pullen.

seek any relief. Thus, there is nothing for us to review on appeal.[13]

3. Pullen contends that the trial court erred when charging the jury by intimating its opinion as to Pullen's credibility in violation of OCGA § 17-8-57.[14]

The trial court instructed the jury on impeachment:

A witness may be impeached several ways, and I will outline the following ways: a) by disproving the facts to which the *Defendant[ ]s* testified; or b) proof that the witness has been convicted of a felony; c) proof that certain crimes, in this particular instance, the crime of criminal attempt to commit burglary, as it relates to the *Defendant*, and the crimes of sale of cocaine, sale of cocaine within 100 feet of a housing project, and possession of a firearm during the commission of a crime, as it relates to the witness Walker. Those — proof of those charges can apply to impeachment of a witness.[15]

Pullen objected to the charge at trial, and he argues on appeal that the trial court's "gratuitous tailoring of the charge to reflect a specific reference to the defendant . . . was tantamount to an expression of opinion that the defendant, in particular, had been so impeached," in violation of OCGA § 17-8-57.

OCGA § 17-8-57, however, "is violated only when the trial court's instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the judge believes the evidence to be."[16] "When the charge on [impeachment] given in this case is considered in context, no reasonable juror could have construed it as an expression of the trial court's own opinion that" Pullen had been impeached or committed the alleged crimes.[17] Moreover, the trial

---

[13] See *Pena v. State*, 247 Ga. App. 211, 216 (1) (542 SE2d 630) (2000) ("When an appellant could have tendered a timely motion for mistrial or requested . . . instruction but declined to do so, we generally will not grant more appellate relief than that actually prayed for at trial.") (punctuation omitted); *O'Kelley v. State*, 175 Ga. App. 503, 505 (1) (333 SE2d 838) (1985) ("Where a defendant makes no motion for mistrial, either at the time of his objection or after the court's curative instruction, there is nothing for us to review."); *Farmer v. State*, 180 Ga. App. 720, 722-723 (6) (350 SE2d 583) (1986).

[14] OCGA § 17-8-57 provides:
It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

[15] (Emphasis supplied.)

[16] (Punctuation omitted.) *Parker v. State*, 276 Ga. 598, 600 (5) (581 SE2d 7) (2003).

[17] Id.

court "otherwise instructed that the jury alone would decide whether [Pullen] was guilty of a crime."[18] This enumeration is without merit.
*Judgment affirmed. Ellington, C. J., and Miller, J., concur.*

DECIDED MARCH 23, 2012.

*Peter D. Johnson*, for appellant.
*R. Ashley Wright, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.