**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**August 8, 2013**

# In the Court of Appeals of Georgia

A13A1308. WALKER v. THE STATE.

MILLER, Judge.

Following a jury trial, Warren Walker was convicted of three counts of sale of 1-(3-trifluoromethylphenyl) piperazine ("TFMPP") (OCGA § 16-13-30 (b)).[1] Walker appeals from the denial of his motion for new trial, contending that (1) there was insufficient evidence to support his conviction and (2) there was a fatal variance between the controlled substance as alleged in the indictment and the substance identified at trial. For the following reasons, we affirm.

> Following a criminal conviction, the defendant is no longer presumed innocent, and we construe the evidence in the light most favorable to the jury's verdict. This Court determines whether the

---

[1] Walker was also charged with possession of a drug related object (OCGA § 16-13-32.2) in the form of digital scales, but the trial court granted Walker's motion for a directed verdict on this count.

evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 [99 SCt 2781, 61 LEd2d 560] (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, we must uphold the jury's verdict.

(Punctuation and citations omitted.) *Boggs v. State*, 304 Ga. App. 698, 698 (1) (697 SE2d 843) (2010).

So viewed, the evidence showed that upon receiving a confidential informant's tip that Eric Melton was selling Ecstasy, police officers directed the confidential informant to make controlled drug buys from Melton. In February 2009, the confidential informant arranged to purchase approximately 100 Ecstasy pills from Melton. The confidential informant visited Melton at his workplace, and police officers surveilled the building. While the confidential informant was inside the building, officers observed a gray colored Mercury Grand Marquis pull into parking lot. Melton then exited the building and made contact with the driver, who was later identified as Walker. Melton and Walker had a brief conversation before Walker left. Melton returned inside the building and gave the confidential informant 100 pills that field-tested positive for Ecstasy.

In March 2009, the police officers conducted another controlled buy from Melton at his workplace. While the confidential informant was inside with Melton, officers observed Walker arrive in the same Mercury Grand Marquis that they had seen during the first controlled drug buy. As before, Melton exited the building, approached Walker, and after a brief conversation, went back inside the building where he handed the confidential informant two bags filled with a total of 188 pills that field-tested positive for Ecstasy. The officers then followed Walker back to his residence and began to keep him under surveillance.

That same month, officers arranged to make a third controlled buy from Melton for 1000 Ecsasty pills. After the confidential informant scheduled the drug buy from Melton, Walker left his residence in his gray vehicle and was followed by police officers. When Walker arrived at Melton's workplace, Melton exited the building and met with Walker. Walker left after a brief conversation with Melton, and Melton returned to the building where he sold 891 pills to the confidential informant that field-tested positive for Ecstasy.

Shortly after leaving Melton's workplace, Walker was arrested and read his *Miranda* rights. Walker indicated he understood these rights and waived them by signing a waiver form. During police questioning, Walker admitted that he supplied

3

Melton with 500 or 600 pills. A sample of pills from each controlled buy was subsequently tested in a laboratory, and the results of the tests revealed that the pills were TFMPP, an Ecstasy-like compound that is referred to on the street as "Ecstasy."

1. Walker contends that the evidence was insufficient to sustain his convictions because no witness saw him do anything illegal, no drugs were recovered from his person or his vehicle, and he was merely present at the scene of the controlled drug buys. We disagree.

OCGA § 16-13-30 (b) provides that "it is unlawful for any person to . . . deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." TFMPP is a controlled substance. OCGA § 16-13-25 (8).

> One who intentionally aids or abets in the commission of a crime is a party to it. OCGA § 16-2-20 (b) (3). A defendant's presence, companionship, and conduct before and after the offense are circumstances from which his participation in the criminal intent may be inferred. A defendant will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the defendant is prosecuted. If the totality of circumstantial evidence is sufficient to connect the defendant with the possession of the drugs, the conviction will be sustained, even though there is evidence to authorize a contrary finding.

4

(Citations and punctuation omitted.) *Martinez v. State*, 314 Ga. App. 551, 552-553 (1) (724 SE2d 851) (2012). Moreover,

> [i]t is axiomatic that a confession alone, uncorroborated by any other evidence, does not justify a conviction. However, a free and voluntary confession of guilt by the accused is direct evidence of the highest character and is sufficient to authorize a conviction when corroborated by proof of the corpus delicti. The evidence corroborating a confession, however, need not definitely connect the defendant to the crime; corroboration in any material particular satisfies the legal requirement.

(Citations and punctuation omitted.) Id. at 553 (1).

Here, Walker freely and voluntarily admitted that during the last controlled drug buy, he supplied Melton with 500-600 pills. These pills tested positive for TFMPP. In addition to Walker's admission, the evidence showed that during the third controlled buy, Walker left his residence and went to Melton's workplace soon after the confidential informant called Melton to arrange the drug buy. During all of the controlled purchases, Walker briefly visited Melton at the location of the controlled drug buy and upon his departure, Melton provided the confidential informant with pills that contained the chemical substance TFMPP. Accordingly, this combined evidence established that Walker actively participated in and was a party to the three separate sales of TFMPP. See *Martinez*, supra, 314 Ga. App. at 554 (1).

5

2. Walker contends that there was a fatal variance between the controlled substance named in the indictment and the controlled substance identified at trial. We disagree.

The indictment in this case charged Walker with the sale of 1-(3-Trifluoromethylphenyl) piperazine (TFMPP). At trial, the State's crime lab analyst testified that the pills recovered from the controlled drug buy tested positive for "TFMPP, one three trichloromethylphenelpipraline." Walker argues that the analyst's description of the drug as "trichloromethylphenelpipraline" demonstrated a fatal variance between the indictment and the evidence and, therefore, the evidence is insufficient to sustain his convictions.

> However, [Walker] failed to raise this issue at the time of his motion for directed verdict, and the record fails to demonstrate that he raised the fatal variance issue before the trial court. The issue is therefore waived for purposes of appeal.

(Citation and punctuation omitted.) *Palmer v. State*, 286 Ga. App. 751, 753-754 (2) (650 SE2d 255) (2007).

Even if not waived, Walker's claim is without merit. Although the chemical analyst described the drug as "trichloromethylphenelpipraline," she also clearly identified the pills as TFMPP, which matched the controlled substance listed in the

6

indictment. Moreover, the analyst's reports admitted into evidence clearly showed that the pills tested positive for TFMPP.[2] As a result, there was no fatal variance between the allegations and the proof.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[2] While Walker relies upon *Williamson v. State*, 134 Ga. App. 864 (216 SE2d 684) (1975) in support of his fatal variance claim, that case is inapposite. Unlike the situation here, in *Williamson*, there was no evidence introduced at trial that the drug listed in the indictment was the same as that identified at trial. See *Williamson*, supra, 134 Ga. App. at 865 (1).