**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 21, 2013**

# In the Court of Appeals of Georgia

A13A1445. RODOLFO LARA MARTINEZ v. THE STATE.

DILLARD, Judge.

Following a jury trial, Rodolfo Lara Martinez was convicted of five counts of forgery in the first degree and two counts of identity fraud. Martinez's conviction on one of the two counts of identity fraud was later reversed by the trial court in its order on a motion for new trial. On appeal, Martinez contends that, as to the forgery counts, the indictment fatally varied from the proof at trial. He also claims that the evidence was insufficient to support his remaining conviction for identity fraud, and that the trial court expressed an improper opinion as to what had been proven at the trial. We agree with Martinez that in August 2007, the fraudulent possession and use of the identifying information of corporations did not fall within the ambit of Georgia's identity-fraud statute, and so we reverse his conviction on that count. Martinez's

other claims, however, are without merit, and so we affirm his convictions for forgery in the first degree.

Viewed in a light most favorable to the jury's verdict,[1] the evidence shows that on August 14, 2007, Martinez attempted to cash a check at Tower Package Store. The check, dated August 10, 2007, purported to be a payroll check issued by Labor Staffing, Inc., and payable to Martinez in the amount of $139.36. The cashier followed the store's usual practice by attempting to access Martinez's information on her computer, but instead she received instructions to immediately contact store security. The security officer determined that, according to the computer-generated information, the check was fraudulent, and so he detained Martinez and notified the DeKalb County Police.

When the responding detective arrived, the security officer gave him copies of four checks that had been previously cashed at the store by Martinez, but that had been returned by the bank as counterfeit. And after the detective arrested Martinez and read him his *Miranda*[2] rights, Martinez claimed that he was "paid that money for doing construction work." But when the detective offered to drive Martinez to any

---

[1] *See Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

2

location where he performed work in order to confirm his story, Martinez was unable to remember any work location or name, address, or telephone number associated with his alleged employers.

At trial, the evidence showed that Martinez previously cashed four checks at the Tower Package Store dated May 25, May 26, May 29, and June 2, 2007, in the amounts of $98.76, $97.86, $148.61, and $146.64, respectively. All four checks purported to be payroll checks issued by Staff Zone, Inc. But according to Staff Zones's manager, the company did not issue any payroll checks to Martinez. The manager also examined photocopies of the checks purported to have been issued by Staff Zone and testified that they were not, in fact, company checks. And as to the check purported to have been issued by Labor Staffing, Inc., and which Martinez attempted to cash at Tower Package Store on August 14, 2007, Labor Staffing's employee in charge of accounting and payroll testified that it was not an authentic corporate check and that the real check bearing the same check number had already been issued by the company to another person in a different amount.

Ultimately, the jury found Martinez guilty of two counts of identity fraud and five counts of first-degree forgery. Martinez moved for a new trial, and the trial court found that the evidence was insufficient to sustain Martinez's conviction on one of

3

the two counts of identity fraud. Martinez's motion for new trial was otherwise denied, and this appeal follows.

1. Martinez contends that the evidence was insufficient to support his forgery convictions. His arguments, however, are based on an alleged variance between the indictment and the proof presented by the State at trial. But setting aside the question of whether Martinez waived his fatal-variance claims by failing to raise them in a timely fashion below,[3] they are nonetheless without merit.

(a) As to the four counts of forgery in the first degree corresponding to the four checks purportedly issued by Staff Zone, Martinez contends that the State failed to prove these crimes because the indictment alleged, but the evidence failed to show, that these checks were actually drawn on Staff Zone's account. We disagree with Martinez that there was a variance between the indictment and the proof presented by the State at trial.

At the outset, we note that a person commits the crime of first-degree forgery if "with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have

---

[3] *See Walker v. State,* __ Ga. App. __ , __ (2) (747 SE2d 691) (2013) (holding that the fatal-variance claim was waived for failure to raise it below)*; Palmer v. State*, 286 Ga. App. 751, 753-754 (2) (650 SE2d 255) (2007) (same).

been made by another person, at another time, with different provisions, or by authority of one who did not give such authority and utters or delivers such writing."[4] And in four separate counts, the indictment alleged that Martinez possessed with intent to defraud, and that he uttered and delivered, four checks payable to himself, specifically identified by number, date, amount, and as also "drawn on Wachovia Bank, N. A. on the account of Staff Zone Inc."[5] But according to Staff Zone's manager, the account number on the checks presented by Martinez was not Staff Zone's actual account number with Wachovia. As such, Martinez argues that the evidence showed that the checks were not drawn on Staff Zone's account, whereas the indictment charged him with uttering checks that were actually drawn on Staff Zone's account.

In considering Martinez's argument, our analysis necessarily begins with the general rule that "[i]f the indictment sets out the offense as done in a particular way,

---

[4] *See* OCGA § 16-9-1 (a) (2007). This Code section was amended in 2012, but the prior version applies here. See Ga. L. 2012, p. 899.

[5] For example, Count Three of the indictment alleges, in part, that Martinez "with intent to defraud, did knowingly possess a certain writing, to wit: a check, being No. 134632 dated 6/2/2007, in the amount of $146.64 payable to [Martinez] drawn on Wachovia Bank, N. A. on the account of Staff Zone Inc. . . ."

5

the proof must show it so, or there will be a variance."[6] But in applying the fatal-variance rule, we must be ever mindful that Georgia no longer employs "an overly technical application of the . . . rule, focusing instead on materiality."[7] And the rule that allegations and proof must correspond is based upon the obvious requirements "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense."[8] Thus, a variance is not fatal if the accused is "definitely informed as to the charges against him and is protected against another prosecution for the same offense."[9]

---

[6] *Ross v. State*, 195 Ga. App. 624, 625 (1) (394 SE2d 418) (1990) (punctuation omitted).

[7] *Haley v. State*, 289 Ga. 515, 529 (3) (a) (712 SE2d 838) (2011) (punctuation omitted); *see also White v. State*, __ Ga. App. __ (744 SE2d 857, 859) (2013) ("We no longer adhere to an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused.").

[8] *McCrary v. State*, 252 Ga. 521, 523 (314 SE2d 662) (1984) (punctuation omitted).

[9] *Nelson v. State*, 269 Ga. App. 103, 106 (2) (603 SE2d 691) (2004) (punctuation omitted).

And here, the four checks at issue appear on their face to be drawn on Staff Zone's account at Wachovia. That the checking account number printed on the checks was not the correct account number was one of several ways in which Staff Zone's manager identified the checks as not being authentic company checks. Moreover, the logo and signatures on actual Staff Zone checks differed from those on the forged checks. But the indictment did not allege that the four checks contained Staff Zone's *correct* banking account number. Accordingly, we discern no actual, much less fatal, variance between the indictment and the evidence. Furthermore, the indictment—which also identifies each check by number, date, and amount—sufficiently apprised Martinez of what writings he was accused of forging,[10] and he is protected from further prosecution for these offenses because, *inter alia*, copies of all the checks referenced in the indictment were introduced into evidence.[11] For the foregoing reasons, as to these four counts, we "reject any fatal variance claim

---

[10] *See, e. g., Veasey v. State*, 322 Ga. App. 591, 594 (1) (b) (745 SE2d 802) (2013) (finding indictment detailed enough for defendant to understand what he was accused of taking, and from whom).

[11] *See Holder v. State*, 242 Ga. App. 479, 480 (2) (529 SE2d 907) (2000) (finding that, because alleged bad check was introduced into evidence, defendant did not face another prosecution thereon even though there was a slight discrepancy in the amount of the check alleged in the indictment and the proof at trial).

and hold the evidence was sufficient"[12] for a rational trier of fact to find Martinez guilty beyond a reasonable doubt of forgery in the first degree.[13]

(b) Martinez also contends that the evidence was insufficient to establish that he was guilty of forgery in the first degree with respect to the check purportedly drawn on the account of Labor Staffing. The indictment alleged, in pertinent part, that Martinez knowingly possessed with intent to defraud, and did utter and deliver, "a check, being No. 94369 dated 8/13/2007, in the amount of $139.36 payable to [Martinez] drawn on SunTrust Bank on the account of Labor Staffing Inc." The check adduced at trial was dated August 10, 2007, not August 13, 2007, as alleged. But notwithstanding the indictment's error, the other information identifying the forged check, including the check number, dollar amount, and the designated payee, drawee bank, and account holder, was sufficient to apprise Martinez of the charge against him.[14] Nor does Martinez face further prosecution for the same offense.[15]

---

[12] *Evans v. State*, 318 Ga. App. 706, 715 (6) (734 SE2d 527) (2012).

[13] *See Jackson v. Virginia* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[14] *See Smith v. State*, 317 Ga. App. 801, 803-804 (1) (732 SE2d 840) (2012) (concluding that although the indictment for forgery improperly identified the check number as the bank routing number, defendant was nevertheless sufficiently informed of the writing upon which the forgery count was based); *Serna v. State*, 308 Ga. App.

8

Accordingly, we find no fatal variance here either. Additionally, as to this count, we conclude that a rational trier of fact could find that Martinez was guilty beyond a reasonable doubt of forgery in the first degree.[16]

2. In three claims of error, Martinez asserts that the crime of identity fraud, as applicable to the August 2007 incident at issue, protected only the identifying information of *natural* persons and not corporations. And here, Martinez was convicted of identity fraud for obtaining the bank account number of the corporate victim, Labor Staffing, Inc.[17] Thus, Martinez contends that the evidence was

---

518, 520-521 (1) (707 SE2d 904) (2011) (finding that where the indictment notified defendant of the date of the offense, the type of offense, and the basis for the offense, and defendant was convicted of the same offense listed in the indictment, indictment charging defendant with possession of nonexistent compound with a name similar to actual controlled substance was not a fatal variance); *Grier v. State*, 198 Ga. App. 840 (403 SE2d 857) (1991) (finding typographical error in describing date of prior conviction did not create fatal error in indictment charging possession of firearm by convicted felon); *Bowman v. State*, 144 Ga. App. 681, 682 (5) (242 SE2d 480) (1978) (variation in allegation and proof as to amount of soybeans stolen could not have harmed the defendant).

[15] *See Holder*, 242 Ga. App. at 480 (2).

[16] *See Jackson*, 443 U. S. at 319 (III) (B).

[17] Although the jury found that Martinez was guilty of a second count of identity fraud with respect to corporate victim, Staffing Zone, the trial court reversed that conviction for insufficient evidence.

9

necessarily insufficient to show that he violated OCGA § 16-9-121 (2007), as then applicable. He further asserts that his trial counsel, not realizing that OCGA § 16-9-121 (2007) did not apply to corporate victims, was ineffective in failing (i) to object to the trial court's instruction to the jury as to the elements of identity fraud, and (ii) by not filing a dispositive demurrer or motion in arrest of judgment. In contrast, the State argues that a corporation could be a victim of identity fraud under the 2007 version of the statute and that the evidence of the crime was, therefore, sufficient, and Martinez's trial counsel effective.

It is undisputed that before May 24, 2007, a victim of the crime of identity fraud was not limited to natural persons. Under OCGA § 16-9-121 (1), as amended in 2002, a person committed identity fraud if, *inter alia*, he or she "with the intent unlawfully to appropriate resources of or cause physical harm to that *person*. . . [o]btains or records identifying information of a *person* which would assist in accessing the resources of that *person* or any other *person*."[18] Under OCGA § 16-1-3, which contains the definitions of certain words used in Title 16, and which has not been amended since 1982, a "person" is "an individual, a public or private corporation, an incorporated association, government, government agency,

---

[18] *See* OCGA § 16-9-121 (1) (2002) (emphasis supplied).

partnership, or unincorporated association."[19] Thus, a "person," which was not separately defined for purposes of the article governing identity fraud, necessarily included corporate victims before May 24, 2007.[20]

And under the current version of the statute, a person commits the crime of identity fraud when, *inter alia*, "he or she willfully and fraudulently . . . [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a *person*."[21] Again, in light of the definition of the term for purposes of Title 16, there is no doubt that a "person" encompasses corporate victims.

But in August 2007, when Martinez used the identifying information of Labor Staffing, the law provided that a person commits the offense of identity fraud when, as applicable here, "he or she willfully and fraudulently . . . [w]ithout authorization or consent, uses or possesses with intent to fraudulently use, identifying information

---

[19] OCGA § 16-1-3 (12).

[20] *See Lee v. State*, 283 Ga. App. 826, 826-27 (1) (642 SE2d 876) (2007) (finding that "Snelling Personnel Services, a company" was a "person" for purposes of the crime of identity theft).

[21] OCGA § 16-9-121 (a) (1) (emphasis supplied).

11

concerning an *individual*."[22] And unlike "person," there is no definition for "individual" in Title 16. The question squarely presented, then, is whether the fraudulent use or possession of the identifying information of a corporation was punishable as the crime of identity fraud under OCGA § 16-9-121 (2007).

And as with any question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[23] And toward that end, we must afford the statutory text its plain and ordinary meaning,[24] consider the text contextually,[25] and read the text "in its most natural and reasonable way, as an

---

[22] OCGA § 16-9-121 (a) (1) (2007) (emphasis supplied), effective May 24, 2007. *See* Ga. L. 2007, p. 450, § 7.

[23] *Deal v. Coleman*, ___ Ga. ___, *5 (Case Nos. S13A1084 and S13A1085, decided November 18, 2013) (punctuation and citation omitted); *see also Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (same).

[24] *See Deal*, __ Ga. __ at *5 ("To that end, we must afford the statutory text its plain and ordinary meaning.") (punctuation and citation omitted); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . .").

[25] *See Deal*, __ Ga. __ at *5 ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012)

12

ordinary speaker of the English language would."[26] In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[27]

In the case *sub judice*, we first consider the ordinary meaning of "individual," as it is not a term of art or a technical term.[28] In its common meaning, an "individual" is an actual human being.[29] And this appears to be the way "individual" is used in the definition of "person" in OCGA § 16-1-3 (12), so as to differentiate a natural person

_____

(same).

[26] *Deal*, __ Ga. __ at *5; *see also Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (same).

[27] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omited); *see also Deal*, __ Ga. __ at *5 ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (punctuation omitted).

[28] *See* OCGA § 1-3-1 (b) (providing that "[i]n all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter"); *Harris v. State*, 286 Ga. 245, 246 (3) (686 SE2d 777) (2009) (applying same).

[29] *See Mohamad v. Palestinian Auth.*, __ U. S. __, __ (I) (A) (132 SCt. 1702, 182 LE2d 720) (2012) (looking first to a word's ordinary meaning when a statute does not define a term and noting that "an individual" normally means "a human being, a person"); The Compact Oxford English Dictionary 880 (2d ed. 1991) (defining "individual" as, *inter alia*, "[a] single human being").

13

from other entities, such as corporations. OCGA § 16-9-121 (2007) also used the term "person," but in the context of the perpetrator or in the context of fraud committed "on another person," but not in the context of the victim whose identifying information was being used or possessed.[30] This, of course, is entirely consistent with the General Assembly having intended that "individual" refer to a natural person, not a corporation.

Furthermore, and of some significance, when the General Assembly again changed the law in 2010, it was "[t]o amend Article 8 of Chapter 9 of Title 16 of the

---

[30] *See* OCGA § 16-9-121 (a) (2) (2007) (a person commits identity theft when he or she willfully and fraudulently "[u]ses identifying information of an individual under 18 years old over whom he or she exercises custodial authority"); OCGA § 16-9-121 (a) (3) (2007) (a person commits identity theft when he or she willfully and fraudulently "[u]ses or possesses with intent to fraudulently use identifying information concerning a deceased individual"); OCGA § 16-9-121 (a) (4) (2007) (a person commits identity theft when he or she willfully and fraudulently "[c]reates, uses, or possesses with intent to fraudulently use any counterfeit or fictitious identifying information concerning a fictitious individual with intent to use such counterfeit or fictitious identification information for the purpose of committing or facilitating the commission of a crime or fraud on another person"); OCGA § 16-9-121 (a) (5) (2007) (a person commits identity theft when he or she willfully and fraudulently "[w]ithout authorization or consent, creates, uses, or possesses with intent to fraudulently use any counterfeit or fictitious identifying information concerning a real individual with intent to use such counterfeit or fictitious identification information for the purpose of committing or facilitating the commission of a crime or fraud on another person").

14

Official Code of Georgia Annotated, relating to identity fraud, so as to *revise*[31] a term so as to *include*[32] businesses as potential identity theft victims."[33] And tellingly, the law was then amended so as to substitute "person" for "individual" in the text of OCGA § 16-9-121 (a) (1), (4), and (5). It follows, then, that no rational trier of fact could have found beyond a reasonable doubt that Martinez committed the crime of identity fraud against "an individual" by using the identifying information of Labor Staffing, a *corporation*, in a manner otherwise prohibited by OCGA § 16-9-121

---

[31] *See* The Compact Oxford English Dictionary 1581 (2d ed. 1991) (defining "revise" as, *inter alia*, "To look or read carefully over, with a view toward improving or correcting . . . [t]o go over again, to re-examine, in order to improve or amend . . . .").

[32] *See* The Compact Oxford English Dictionary 831 (2d ed. 1991) (defining "include" as, *inter alia*, "[t]o . . . embrace, comprise, contain . . . to place in a class or category ").

[33] Ga. Laws. 2010, p. 568 (emphasis supplied).

(2007).[34] Accordingly, Martinez's identity-fraud conviction must be reversed,[35] and

Martinez's claims that his trial counsel rendered ineffective assistance are moot.

---

[34] The State's arguments to the contrary are unavailing. It is of no consequence that the scope of OCGA 16-9-120 *et seq.* (2007) was arguably broadened in some respects, or that other, more universal provisions of this statutory scheme can be construed as applying to business victims of identity theft (*e.g.*, the venue provision). The fact remains that the "elements of offense" outlined in OCGA § 16-9-121 (2007) make it abundantly clear that the only possible victim of this offense is "an individual," not a business. Furthermore, even if we assume *arguendo* that the State's reading of these other "conflicting" provisions is accurate, this changes nothing. At best, these provisions arguably create an ambiguity as to the meaning of "individual," and we have repeatedly held that "criminal statutes must be strictly construed against the State." *Hedden v. State*, 288 Ga. 871, 875 (708 SE2d 287) (2011) (punctuation omitted). *Accord Davis v. State*, 273 Ga. 14, 15 (537 SE2d 663) (2000). *See also State v. Marlowe*, 277 Ga. 383, 386 (1) (b) n.24 (589 SE2d 69) (2003) (noting that although another construction of the criminal statute at issue was possible, "the legislature's choice is not clear and an ambiguous criminal statute must be strictly construed against the State"); *Busch v. State*, 271 Ga. 591, 595 (523 SE2d 21) (1999) (construing criminal statute narrowly in light of rule requiring its strict construction).

[35] We note that although Martinez did not demur to the indictment, he does not need to demonstrate that the indictment was void in order to show that the evidence was insufficient to support his conviction for violating OCGA § 16-9-121 (2007). *See, e.g., McKay v. State*, 234 Ga. App. 556, 556-560 (1), (2) (507 SE2d 484) (1998) (reviewing claim that evidence was insufficient to support appellant's conviction for selling marijuana within 1,000 feet of housing project in violation of OCGA § 16-13-32.5, but refusing to consider claim that indictment failed to allege any violation of OCGA § 16-13-32.5); *Williams v. State*, 162 Ga. App. 350, 352-53 (291 SE2d 425) (1982) (reviewing sufficiency of evidence under standard of *Jackson v. Virginia*, but refusing to accept claim of an allegedly void indictment as a proper basis to challenge conviction on the general grounds).

3. Lastly, Martinez contends that the trial court violated OCGA § 17-8-57 by assuming certain facts in its instruction to the jury. We disagree.

OCGA § 17-8-57 provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." And here, Martinez maintains that this statute was violated when the trial court instructed the jury as follows:

> The intent of the accused to defraud is an essential element of the crime of forgery. As one of the essential elements of the crime, it is the duty of the State to prove that in writing the name of Labor Staffing, Inc. or Staff Zone, Inc. and in presenting the writing as a genuine document it was the intent of the accused to defraud Tower Package Store.

Martinez argues that this instruction assumes that he wrote the checks and presented them, and that it was not for the trial court to comment on such facts. However, the trial court's instruction must be considered as a whole, and Martinez cannot necessarily show error by highlighting a narrow portion of the jury charge. Rather, OCGA § 17-8-57 is violated only when the trial court's instruction, "considered as a whole, assumes certain things as facts and intimates to the jury what

17

the judge believes the evidence to be,"[36] and the portion of the instruction complained of only addresses intent. And here, the trial court previously instructed the jury as to the elements of forgery in the first degree, explaining that it was for the State to prove those elements beyond a reasonable doubt. The trial court also defined a writing for purposes of forgery, knowledge as an element of the crime, and reiterated that the State must prove beyond a reasonable doubt that the defendant delivered a forged document. Thus, viewing the charge as a whole, a reasonable juror would not have understood the charge to mean that the trial court was expressing an opinion that Martinez had, in fact, written and presented the checks at issue.[37] Accordingly, we find no error.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and McMillian, J., concur.*

---

[36] *Simmons v. State*, 291 Ga. 705, 708 (5) (733 SE2d 280) (2012); *see Parker v. State*, 276 Ga. 598, 600 (5) (581 SE2d 7) (2003) (viewing contested charge in context of instruction as a whole).

[37] *See, e.g.*, *Pullen v. State*, 315 Ga. App. 125, 129-130 (3) (holding, upon consideration of the jury charge as a whole, that no reasonable juror could have construed it to be an expression of the trial court's own opinion).