**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1165, A19A1166. HARRIET H. RONDOWSKY, AS CO-
       TRUSTEE OF THE CHARLES C. HARMAN TRUST v.
       MARY HARMAN BEARD, AS EXECUTRIX OF THE
       ESTATE OF JAMES H. BEARD, III; and vice versa.

DILLARD, Presiding Judge.

Harriett H. Rondowsky, as co-trustee of the Charles C. Harman Trust, appeals the trial court's grant of summary judgment in favor of Mary Harman Beard, as executrix of the estate of James H. Beard, III (Case No. A19A1165). Specifically, Rondowsky argues that the trial court erred in granting summary judgment based solely on the plain language of OCGA § 53-12-204 when the court did not (1) perform "the necessary analysis of the entire factual circumstances presented by this case," and (2) consider the "ramifications" of other litigation pending between the parties. Mary Harman Beard, as executrix of the estate of James H. Beard, III, cross-

appeals the trial court's denial of a motion to disqualify counsel of record from representing the Trust (Case No. A19A1166). Specifically, Beard contends that the trial court erred in denying this motion when it (1) correctly held that Rondowsky could not act unilaterally to bring suit against the Estate, and (2) failed to order the return or reimbursement of Trust assets used to fund the improper litigation. For the reasons set forth *infra*, we affirm in both cases.

Viewing the facts in the light most favorable to Rondowsky (*i.e.*, the non-movant),[1] the record shows that Charles C. Harman appointed his son-in-law James H. Beard, III to act as, *inter alia*, trustee of a trust created under the terms of Harman's will—the Charles C. Harman Trust. The relevant income beneficiaries of the Trust were Harman's three daughters: Jenilu Harman, Harriett Harman Rondowsky (appellant/cross-appellee), and Mary Harman Beard (appellee/cross-appellant). After James Beard resigned as trustee, Rondowsky and her niece, Mary Harman Beard's daughter, Jenny Beard Biehunko, assumed the roles of co-trustees following election to this position by the Trust beneficiaries.

---

[1] *See, e.g.*, *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (punctuation omitted)).

2

On September 14, 2017, in her capacity as a co-trustee of the Trust, Rondowsky filed a complaint against Beard in *her* capacity as executrix of James Beard's estate. Rondowsky asserted that James Beard served as sole trustee of the Trust from November 1980 until March 2015, and during that time, he breached his fiduciary duties, committed conversion, and made fraudulent transfers. And as a result, Rondowsky sought imposition of a constructive trust against Beard in *her* capacity as executrix of the Estate.

In response, Beard asserted that Rondowsky lacked standing to bring suit on behalf of the Trust because she had not obtained co-trustee Biehunko's consent to file the lawsuit. Beard also asserted counterclaims against Rondowsky, including an assertion that Rondowsky was using Trust assets to pay for what amounted to personal counsel—due to the alleged lack of standing—in the action against Beard. In bringing these counterclaims, Beard noted that she was "not a party to this action since she is named only in her representative capacity on behalf of the Estate" and, thus, she believed that "claims against the Trust and claims asserted in her individual capacity are not properly asserted as compulsory counterclaims in this action." Thus, she asserted her counterclaims "in an abundance of caution." And all future relevant filings by Beard were also made in her capacity as executrix of the Estate.

3

Beard later filed a motion for summary judgment on May 25, 2018, asserting that the motion should be granted because—as previously raised in her answer and counterclaim—Rondowsky lacked standing to bring the action on behalf of the Trust without the consent of co-trustee Biehunko, as required by OCGA § 53-12-204 (1). That same day, Beard also filed a motion to disqualify counsel of record from its purported representation of the Trust and to require reimbursement of Trust assets used to fund the action, relying upon the same reasoning as the motion for summary judgment.

In support of her arguments, Beard submitted an affidavit from Biehunko, who averred that after she and Rondowsky assumed the roles of trustees, they employed the services of professionals to investigate potential claims for mismanagement of the Trust by Biehunko's father, James Beard. Thereafter, Rondowsky and Biehunko participated in an unsuccessful mediation with the Estate; but the parties continued to negotiate and reached a preliminary settlement agreement. Thus, Biehunko did not consent to—and instead expressly objected to—the Trust filing suit against the Estate. Biehunko also averred that she objected to filing suit because (1) she feared the Trust would have difficulty proving its claims due to the passage of time, (2) the Estate indicated that it would file counterclaims against the Trust, and (3) she feared

4

litigation would be complex, lengthy, and "ruinously expensive" for the Trust. As to this final point, Biehunko expressed concern that the cost to the Trust would "deprive the three income beneficiaries of income distributions for years to come," which she "believed was something to avoid since they [were] all of advanced age." Biehunko also asserted that counsel of record for the Trust in this litigation had only ever served as personal counsel to Rondowsky in the past, and Biehunko had neither consented to counsel entering an appearance on behalf of the Trust nor to Rondowsky using Trust assets to pay the legal fees.

In response to interrogatories, Rondowsky *admitted* that Biehunko never consented to the Trust employing counsel of record or using Trust assets to fund the litigation. And she further *admitted* that Biehunko had not approved of the action against the Estate. But in a responding affidavit to Beard's motions, Rondowsky averred that Biehunko suffered from a conflict of interest—because of her mother–daughter relationship with Beard—and should have resigned as co-trustee or recused herself from any proceedings. Thus, Rondowsky argued that she had been placed in the position of having to "go it alone" to protect the Trust, which, she

argued, was permitted under Georgia law.[2] More precisely, she asserted that Biehunko's conflict of interest presented the trial court with a genuine issue of material fact as to her actions in failing to consent to the action. Rondowsky also maintained that *Beard* lacked standing to seek redress against the Trust while acting in her capacity as executrix of the Estate, because Beard was not a beneficiary of the Trust in that capacity.

On September 6, 2018, the trial court granted Beard's motion for summary judgment, concluding that Rondowsky was serving as a co-trustee alongside Biehunko and that Biehunko had not only declined to consent to the filing of the action but had specifically objected to it for a number of reasons. Thus, the trial court concluded that, as one of two co-trustees, Rondowsky was not authorized to file suit on behalf of the Trust over the objections of her co-trustee. The court also concluded that, based upon its grant of summary judgment to Beard, all other pending motions in the case were rendered moot, including Beard's motion to disqualify counsel. These appeals follow.

---

[2] In support, Rondowsky asserted that Georgia law permitted her to maintain an action to compel Biehunko to act on behalf of the Trust, but that the timing of the failed mediation and settlement precluded her from pursuing such an action. She also argued that Georgia's requirement that co-trustees act unanimously is "a minority rule in the United States." For the reasons set forth *infra*, these assertions are unavailing.

1. *Case No. A19A1165.* Rondowsky argues that the trial court erred in granting summary judgment to Beard based solely on the plain language of OCGA § 53-12-204 (1). Specifically, she contends that the trial court erred in granting Beard's motion when the court did not (a) perform "the necessary analysis of the entire factual circumstances presented by this case," or (b) consider the "ramifications" of the other litigation pending between the parties. We will consider both of these arguments in turn.

In interpreting any statute, "we necessarily begin our analysis with familiar and binding canons of construction."[3] And in considering the meaning of a statute, our charge is to "presume that the General Assembly meant what it said and said what it meant."[4] To that end, we must afford the statutory text its plain and ordinary meaning,[5] consider the text contextually,[6] read the text "in its most natural and

---

[3] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014).

[4] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation & citation omitted); *accord Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012); *Martinez v. State*, 325 Ga. App. 267, 273 (750 SE2d 504) (2013).

[5] *Deal*, 294 Ga. at 172 (1) (a); *see State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies)[.]"); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In

reasonable way, as an ordinary speaker of the English language would,"[7] and seek to "avoid a construction that makes some language mere surplusage."[8] Thus, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[9]

construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning[.]" (punctuation & citation omitted)).

[6] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation & citation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (punctuation & citation omitted)).

[7] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *Martinez*, 325 Ga. App. at 273.

[8] *In the Interest of L. T.*, 325 Ga. App. at 592 (punctuation & citation omitted); *accord Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011); *Singletary*, 310 Ga. App. at 572.

[9] *Luangkhot*, 292 Ga. at 424 (1) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *Martinez*, 325 Ga. App. at 273 (same).

Here, we consider the plain meaning of OCGA § 53-12-204 (1), which provides that when "[a] power [is] vested in two or more trustees," the authority of those co-trustees to act on behalf of the trust "shall only be exercised by their unanimous action; provided, however, that a cotrustee may delegate to one or more other cotrustees the performance of ministerial acts[.]" The only exceptions to this rule are (1) if a vacancy arises in the office of a co-trustee, in which case "the remaining cotrustee or cotrustees may act unless or until the vacancy is filled;"[10] and (2) if a co-trustee is unable to act "because of inaccessibility, illness, or other temporary incapacity," in which case "the remaining cotrustee or cotrustees may act as if they were the only trustees when necessary to accomplish the purposes of the trust."[11] And applying the plain language of these statutory provisions, the trial court concluded that Rondowsky lacked standing to bring suit on behalf of the Trust when it was undisputed that Biehunko, her co-trustee, had not consented to filing suit and had in fact expressly objected to doing so.

(a) Nevertheless, Rondowsky argues that there are genuine issues of material fact as to whether her duty to protect the Trust under OCGA § 53-12-305 (a) (3)

---

[10] OCGA § 53-12-204 (2).

[11] OCGA § 53-12-204 (3).

9

overcame the plain language of OCGA § 53-12-204. She also contends that Biehunko's alleged conflict of interest created a genuine issue of material fact as to the appropriateness of her failure to consent to the action. But under the plain language of OCGA § 53-12-204, as set forth *supra*, neither argument holds water.

OCGA § 53-12-305 (a) (3) specifies that "[a] trustee shall be liable to the beneficiary for a breach committed by a cotrustee if such trustee[ ] . . . [a]pproves, knowingly acquiesces in, or conceals a breach of trust committed by the cotrustee[.]" But setting aside whether any tension exists between OCGA § 53-12-305 (a) (3) and OCGA § 53-12-204, Rondowsky's argument assumes that Biehunko's failure to consent to filing the action is itself a breach of trust. And the remedy for such a situation lies within OCGA § 53-12-306, which provides that "[a] trustee may maintain an action against a cotrustee to: (1) [c]ompel the cotrustee to perform duties required under the trust; (2) [e]njoin the cotrustee from committing a breach of trust; or (3) [c]ompel the cotrustee to redress a breach of trust committed by such cotrustee."[12] Thus, if Rondowsky truly believed that Biehunko's refusal to consent to suit constituted a breach of trust, or that Biehunko suffered from a conflict of interest, Rondowsky had remedies to right those alleged wrongs. But under the plain

---

[12] OCGA § 53-12-306 (a) (1)-(3).

language of OCGA § 53-12-204, unilaterally filing suit on behalf of the Trust was not one of them.[13]

(b) Rondowsky also asserts that the trial court should have considered the ramifications of the separately—and later—filed action between the parties before granting summary judgment in this case. This argument is also a nonstarter.

As of April 2018, Beard filed a separate action in Fulton County against Rondowsky and Biehunko, seeking—according to Rondowsky—to recover "damages primarily against [Rondowsky] individually" on grounds of alleged breaches of fiduciary duty. In that action, which the parties referred to in the trial court as the "2018 action" (as opposed to this case, the "2017 action"), Rondowsky brought a

---

[13] We are unconvinced by Rondowsky's citation to *Smith v. Francis*, 221 Ga. 260 (144 SE2d 439) (1965), a case decided 45 years before our General Assembly's 2010 enactment of the Revised Georgia Trust Code of 2010. *See* 2010 Ga. Laws, Act 506, § 1, *codified at* OCGA § 53-12-1 (a). In *Smith*, the Supreme Court of Georgia held that, "[w]hile recognizing the general rule that the unified action of all the trustees is required to dispose of trust property, we give effect to the proposition that, under our law, each trustee has the duty and is clothed with the authority necessary to protect the corpus of the trust." 221 Ga. at 264 (3) (citations omitted). But *Smith* concerned one of two co-trustees signing an affidavit that the property on which a judgment creditor was attempting to levee belonged to a trust and not the judgment debtor, and the Court determined that one trustee's signature was sufficient to protect the assets. *Id.* at 264-65 (3). Suffice it to say, the situation in this case is wholly inapposite.

cross-claim against Biehunko for breach of fiduciary duty, seeking, *inter alia*, to remove her as a co-trustee.

Rondowsky essentially argues that the trial court should have permitted this case to go forward based on the hypothetical assumption that she will prevail in the separate 2018 action, resulting in Biehunko being removed as co-trustee and leaving Rondowsky the sole trustee, which will no longer require unanimous action. But that suggestion completely ignores that standing is a *threshold* issue.[14] And the trial court was not required to take a wait-and-see approach dependent upon a separately and later filed action before addressing the issue of standing in the case before it because

---

[14] *See, e.g.*, *New Cingular Wireless PCS, LLC v. Ga. Dep't of Rev.*, 303 Ga. 468, 470 (1) (813 SE2d 388) (2018) ("[T]he question of standing is a jurisdictional issue."). Rondowsky relies upon *Memar v. Styblo*, 293 Ga. App. 528 (667 SE2d 388) (2008), to assert that this is a situation of misnomer; but misnomer and lack of standing are entirely separate issues. *See Degussa Wall Sys., Inc. v. Sharp*, 286 Ga. App. 349, 351 (648 SE2d 687) (2007) ("While leave of court is not required to correct a mere misnomer in a party name, the attempted substitution of [the appellant] for [the original filing party] was more than an attempt to correct a misnomer. . . . [The] amendment was no simple attempt to correct a name as a misnomer, but rather was a change in actual parties requiring leave of court under OCGA § 9-11-21. And because the trial court never allowed [appellant] to become a party to the lawsuit, [appellant] had no standing to appeal in this action." (footnote & citations omitted)).

12

"[s]tanding must be determined at the time at which the plaintiff's complaint is filed[.]"[15]

We affirm, then, the trial court's grant of summary judgment to Beard on the basis that Rondowsky—in her capacity as trustee and acting without the consent of her co-trustee—lacked standing.

2. *Case No. A19A1166.* Beard, as executrix of the estate of James H. Beard, III, cross-appeals on the trial court's denial of her motion to disqualify counsel of record from representing the Trust. Specifically, she argues that the trial court erred in doing so when (a) the court correctly held that Rondowsky could not act unilaterally to bring suit against the Estate, and (b) the court failed to order the return or reimbursement of Trust funds that were used in the improper litigation. Once again, after granting summary judgment to Beard, the trial court held that all other outstanding motions were moot. We agree.

---

[15] *Parker v. Leeuwenburg*, 300 Ga. 789, 790 (797 SE2d 908) (2017) (punctuation omitted); *accord Phillips v. Selecto Scientific*, 308 Ga. App. 412, 412 (1) (707 SE2d 615) (2011); *Assoc. Credit Union v. Pinto*, 297 Ga. App. 605, 606 (677 SE2d 789) (2009); *see Lewis v. Van Anda*, 282 Ga. 763, 765 (1) (653 SE2d 708) (2007) ("The timely assertion of a standing defense is necessary to prevent . . . [d]iscovery, a pretrial conference and order, and a fairly lengthy trial consum[ing] judicial as well as private resources unnecessarily, if [the] plaintiff had no capacity to pursue th[e] claim. [Standing] is primarily a threshold question and generally collateral to the real issues." (punctuation omitted)).

(a) As to Beard's motion to disqualify counsel of record from representing the Trust, the trial court correctly denied this motion as moot because the grant of summary judgment ended the action.[16]

(b) As to Beard's request that the trial court order Rondowsky to return Trust assets that were used to fund the improper litigation, the trial court properly denied this motion when Beard—who was acting throughout this case in her capacity as executrix of her late husband's Estate—lacked standing in that capacity to seek such relief in this case.[17] As discussed *supra*, the argument that Beard lacked standing to

---

[16] *See Kaylor v. Atwell*, 251 Ga. App. 270, 274 (3) (553 SE2d 868) (2001) ("[Appellant] enumerates as error the denial of his motion to disqualify defense counsel. However, our affirmance of the grant of summary judgment to all defendants renders this issue moot."); *Merchant v. Mitchell*, 241 Ga. App. 173, 174 (2) (525 SE2d 710) (1999) (holding that, in light of trial court having properly dismissed plaintiff's action due to the failure to state a claim upon which relief could be granted, the trial court also properly denied as moot the plaintiff's motion to disqualify counsel for defendant).

[17] *See* OCGA § 53-12-501 (a) (1)-(8) (providing trust *beneficiaries* with various remedies for a breach of trust); *Nalley v. Langdale*, 319 Ga. App. 354, 367 (3) (a) (734 SE2d 908) (2012) (physical precedent only) ("Because [counter-claimant] is no longer the trustee, . . . he lacks standing to pursue claims on behalf of the remainder beneficiaries for the return of the trust funds. [T]he right to pursue an action concerning the wrongful distribution of trust funds belongs exclusively to the trust beneficiaries or to one with the authority to act on behalf of the trust beneficiaries, such as a co-trustee or successor trustee."); *see also Richards v. Richards*, 281 Ga. 285, 287-88 (1) (637 SE2d 672) (2006) ("An 'interested person' is more accurately defined as a person or entity with a specific financial stake in or a specific claim

14

seek this relief when acting in this capacity was before the trial court. Indeed, at the hearing on the various motions in *this action*, and in response to a direct question by the trial court, Beard's counsel admitted that Beard was in the 2018 case as a beneficiary, but not in the 2017 case—*i.e.*, this case—as a beneficiary. And although the trial court did a blanket dismissal of all outstanding motions as moot, we may affirm the trial court if it was right for any reason.[18] Accordingly, because Beard

---

against the trust. To the extent that any genuine issue of material fact may remain as to the allegations that the trustee should be removed and a receiver appointed because the trust agreement has been breached, that claim belongs to the children, as the beneficiaries, and not to Appellant in her individual capacity as their mother." (punctuation & citations omitted)). *Cf. Gill v. Hartshorn*, No. 4:12–CV–77, 2014 WL 1431196, at *4-5 (II) (A) (M.D. Ga. April 14, 2014) (distinguishing *Nalley v. Langdale* by rejecting argument that plaintiffs were no longer beneficiaries with standing because, unlike the former trustee in *Nalley*, although plaintiffs sought to separate themselves from the trust, they would not waive their beneficiary status until all claims between certain parties were resolved, and plaintiffs were the only parties in the action to have asserted RICO claims).

[18] *See Georgia-Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) ("A grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." (emphasis & punctuation omitted)); *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105 (1) (796 SE2d 489) (2017) ("[W]e may affirm a dismissal if it is right for any reason.").

15

lacked standing in her capacity as executrix of the Estate to pursue relief against the Trust, we affirm the trial court's dismissal of this request as well.[19]

For all these reasons, we affirm the trial court's judgment in both Case No. A19A1165 and Case No. A19A1166.

*Judgments affirmed. Gobeil and Hodges, JJ., concur.*

---

[19] *See Ga. Insurers Insolvency Pool v. Hulsey Envir. Servs., Inc.*, 293 Ga. 504, 505-06 (748 SE2d 380) (2013) (affirming grant of motion to dismiss when party lacked standing to bring suit).